MICHIGAN WASTE SYSTEMS, INC v DEPARTMENT OF
NATURAL RESOURCES

Docket No. 85999. Submitted January 8, 1987, at Lansing. Decided
February 17, 1987. Leave to appeal applied for.

In May, 1982, the Department of Natural Resources issued a
construction permit to Michigan Waste Systems, Inc., permit-
ting the construction of a landfill in Robinson Township, Ot-
tawa County. The township advised Michigan Waste Systems
that construction would require rezoning and certain township
permits. When the company and the township were unable to
settle differences as to whether the company had to comply
with township requirements, the company commenced con-
struction of the landfill. In December, 1982, the township filed
suit in Ottawa Circuit Court, seeking to enjoin construction of
the landfill and alleging that the DNR had granted the construc-
tion permit in violation of the Michigan Environmental Protec-
tion Act and various township ordinances. In February, 1983,
the company applied for an operating license under the provi-
sions of the Solid Waste Management Act. In April, 1983, the
Ottawa Circuit Court issued a preliminary injunction prohibit-
ing further construction on the landfill. In June, 1983, the
Michigan Environmental Review Board recommended the issu-
ing of the operating license. In July, 1983, the deputy director
of the DNR recommended to the acting director of the DNR that
the operating license be issued. On September 6, 1983, the
acting director of the DNR received a formal recommendation
that the operating license be issued from the acting chief of the
ground water quality division of the DNR. On September 7,
1983, the acting director of the DNR approved the Ottawa
County Solid Waste Management Plan, which specifically ex-

REFERENCES

Am Jur 2d, Actions §§ 156 *et seq.*

Am Jur 2d, Appeal and Error §§ 545 *et seq.*, 772 *et seq.*

Am Jur 2d, Mandamus §§ 31 *et seq.*, 380 et seq.

Am Jur 2d, Pollution Control §§ 244 *et seq.*

Applicability of zoning regulations to waste disposal facilities of
state or local govenmental entities. 59 ALR3d 1244.

See also the annotations in the Index to Annotations under Manda-
mus.

cluded the subject landfill. On September 8, 1983, the acting director of the DNR denied the application for an operating license solely on the basis that he was statutorily forbidden to grant the license because it was not consistent with the Ottawa County Solid Waste Management Plan. Michigan Waste Systems requested a contested case hearing and was told that it would be several months before a prehearing conference could be held because of the backlog of pending cases. Michigan Waste Systems then commenced a mandamus action in Ingham Circuit Court, seeking a preliminary injunction compelling the DNR and its director to issue the operating license and to withdraw approval of the Ottawa County Waste Management Plan until plaintiff's landfill was included in that plan. Ottawa County intervened as a party defendant in the Ingham Circuit Court action and moved to consolidate that action with the township's action which was still pending in Ottawa Circuit Court. The motion to consolidate was denied. Following a hearing to consider both a previously issued order to show cause why the DNR should not issue the operating license and defendant county's motion for accelerated judgment on the basis of plaintiff's failure to exhaust its administrative remedies, the Ingham Circuit Court, James R. Giddings, J., denied defendant county's motion for accelerated judgment and ordered defendant DNR to issue plaintiff the operating permit. Plaintiff filed a motion for further equitable and declaratory relief, seeking a declaration that the landfill be declared to be in the Ottawa County Solid Waste Management Plan as a matter of law. Judge Giddings ordered that plaintiff's landfill be included in the Ottawa County Solid Waste Management Plan. Defendant county appealed. A stay of execution was granted on defendant county's motion.

The Court of Appeals *held:*

1. While it would appear that the trial court erred in refusing to consolidate this case with the Ottawa Circuit Court action, the aims of justice would not be served by now remanding with an order that the matters be consolidated.

2. It was proper for the trial court to proceed on the complaint for mandamus even though plaintiff did not file a separate motion for the issuance of the writ of mandamus, since a motion for the writ was included in the complaint as is permitted by the court rules.

3. The trial court properly proceeded with its determination following the hearing, since plaintiff established the need for immediate action.

4. While normally one must exhaust administrative remedies

before seeking mandamus, given the nature of the administrative remedy in this case and the fact that the question involved was one of law, the trial court did not err in holding that judicial review was not precluded because of a failure to exhaust administrative remedies.

5. The trial court did not abuse its discretion in holding that the acting director of the DNR was not precluded from issuing the operating license after the county plan had been adopted. Accordingly, the trial court properly ordered the DNR to issue the operating license to plaintiff.

6. It was error for the trial court to order that plaintiff's landfill be included in the county's solid waste management plan as a matter of law. The trial court should have ordered the DNR to set a timetable in which local authorities would bring the county's plan into compliance with the Solid Waste Management Act.

Affirmed in part and reversed in part.

1. ACTIONS — CONSOLIDATION OF ACTIONS — APPEAL.

The question of whether there should be consolidation of separate actions is a question addressed to the sound discretion of the trial court which will not be overruled by the Court of Appeals unless an abuse of discretion is clearly shown.

2. MANDAMUS — COMPLAINTS — MOTIONS.

A complaint for mandamus may contain a motion for issuance of a writ of mandamus; where such a motion is contained in the complaint, the plaintiff need not file a separate motion for the issuance of the writ (GCR 1963, 714.2[1]).

3. MANDAMUS — TRIAL — HEARING.

A full trial on the merits is not a prerequisite to the granting of a writ of mandamus; such a writ may be issued following a hearing before the court alone (GCR 1963, 714.4).

4. MANDAMUS — IMMEDIATE ACTION.

A showing of a need for immediate action, as is required before immediate action can be taken on a complaint for mandamus, is adequately made where the plaintiff would suffer significant financial losses by reason of the denial of a landfill operation license by the Department of Natural Resources after having expended substantial amounts in a good faith effort to bring the landfill into compliance with the statutory requirements and there would be inordinate delays because of a backlog of contested cases in bringing an administrative appeal.

5. MANDAMUS — APPEAL — PRESERVING QUESTION — PREJUDICE.

Irregularities by a circuit court in the issuance of a writ of

mandamus are not subject to appellate review where the defendant failed to object to the irregularities in the circuit court and fails to make a showing on appeal of prejudice from the irregularities.

6. MANDAMUS — APPEAL — FINDINGS OF FACT.

The Court of Appeals will not reverse a trial court's granting of a writ of mandamus absent a showing of an abuse of discretion; the findings of fact underlying a writ of mandamus will not be set aside on appeal unless clearly erroneous.

7. ENVIRONMENT — SOLID WASTE DISPOSAL — COUNTY WASTE MANAGEMENT PLAN — SOLID WASTE MANAGEMENT ACT.

The Department of Natural Resources may not refuse to issue an operating license for a landfill merely because the landfill is not included in a county waste management plan where the landfill had been constructed pursuant to a DNR construction permit that had been issued prior to the adoption of the county waste management plan, since such a landfill is not a new solid waste disposal facility within the meaning of the Solid Waste Management Act (MCL 299.430[3]; MSA 13.29[30][3]).

8. ENVIRONMENT — SOLID WASTE DISPOSAL — COUNTY WASTE MANAGEMENT PLAN — REMEDIES — SOLID WASTE MANAGEMENT ACT.

A circuit court, upon determining that the Department of Natural Resources improperly refused to issue an operating permit for a landfill on the basis that the landfill was not included in a county solid waste management plan, may properly issue a writ of mandamus directing the Department of Natural Resources to issue the operating permit; however, the court may not order that the county waste management plan be summarily changed to include the now-licensed landfill but must rather only direct that the Department of Natural Resources set a timetable for requiring local authorities to bring the county waste management plan within the mandate of the Solid Waste Management Act (MCL 299.429[2]; MSA 13.29[29][2]).

*Cooper & Fink* (by *Daniel S. Cooper* and *David H. Fink*), for plaintiff.

*Scholten, Fant & Marquis, P.C.* (by *Larry Sanders* and *Douglas R. McDonald*), and *Wesley J. Nykamp,* for intervening defendant.

Before: Hood, P.J., and Beasley and L. Town-
send,* JJ.

Beasley, J. Intervening defendant, County of
Ottawa, appeals from certain orders entered in the
Ingham Circuit Court, the effect of which orders is
to refuse to stop plaintiff, Michigan Waste Sys-
tems, Inc., from the construction and operation of
a landfill in Robinson Township in Ottawa County.
It should be noted that, technically, defendant DNR
has withdrawn its appeal because it felt defendant
county would adequately develop the legal issues
presented in this Court.

The facts are as follows. On February 23, 1981,
pursuant to the provisions of the Solid Waste
Management Act[1] (Act 641), plaintiff applied to the
DNR for a construction permit for a proposed land-
fill in Robinson Township, Ottawa County. Besides
completing its own environmental and technical
assessments of the site, the DNR conducted a public
hearing on the proposed landfill on May 29, 1981.
On October 16, 1981, defendant DNR determined
that the proposed landfill would have "significant
potential environmental impacts" and referred the
application to the Michigan Environmental Re-
view Board (MERB) for a recommendation regard-
ing the issuance of a construction permit under
Act 641.

On December 21, 1981, MERB recommended that
plaintiff's application for a construction permit be
rejected. In a report critical of the proposed site,
MERB recommended that an alternative site be
chosen or that, if the proposed site were pursued,
significant design changes be made and the new
design returned to MERB for further review. On

---

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

[1] 1978 PA 641; MCL 299.401 et seq.; MSA 13.29(1) et seq.

May 18, 1982, contrary to the MERB recommendation, defendant DNR issued an Act 641 construction permit, which authorized defendant to construct its landfill in accordance with the submitted plans, but included a number of additional stipulations intended to address the concerns that the landfill posed a serious threat to surrounding wetlands and rivers.

Following the issuance of the construction permit, Robinson Township contacted plaintiff and advised it that its proposed project would require rezoning, a township earth change permit and a township landfill permit. On July 13 and 14, 1982, plaintiff submitted applications for these permits to the township, with the reservation that it did so despite the counsel of its attorneys that Act 641 had "preempted the field, and that township ordinances have no validity." Efforts to process these permit applications continued until December 14, 1982, when the township learned that plaintiff had already begun construction of the landfill. The township responded on December 16, 1982, by filing suit in Ottawa Circuit Court, seeking to enjoin the construction of the landfill.[2] The township claimed that defendant DNR had granted the construction permit in violation of the Michigan Environmental Protection Act (MEPA),[3] and various township ordinances.

In February, 1983, upon completion of one of the cells of the landfill, plaintiff applied to the DNR for an operating license under Act 641.[4] On March 23, 1983, the proposed operating license was again referred to MERB. Review of the license application by MERB culminated in June, 1983, with a clear

[2] *Robinson Twp v Michigan Dep't of Natural Resources*, File No. 82-6339.

[3] 1970 PA 127; MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*

[4] MCL 299.413; MSA 13.29(13).

recommendation in favor of issuing the license. The operating license contained a comprehensive set of environmental stipulations, including supplemental ground water and surface water monitoring, notice to the community of monitoring results, and a program for the provision of alternative water supplies in the event of any threat to the public health or safety. The MERB recommended the operating license to the DNR "as a model to be used on all future operating licenses."

On April 12, 1983, while the application for an operating license was pending, the Ottawa Circuit Court issued a preliminary injunction ordering a halt to further construction of the landfill. Relying on MCL 299.430(4); MSA 13.29(30)(4), the court held that, absent the adoption and approval of an Ottawa County Solid Waste Management Plan,[5] the Robinson Township ordinances applied to the construction of the landfill and that the township could proceed with its claim that the construction permit was granted in violation of the MEPA.

On July 26, 1983, the deputy director of defendant DNR recommended to the acting director that he issue plaintiff the license to operate the landfill. The deputy director acknowledged that the review of the Ottawa County Solid Waste Management Plan was pending, but stated that, in the absence of an improved plan, it was permissible to issue the license. Again on September 6, 1983, the acting director received a formal recommendation that the license be issued, this time from the acting chief of the ground water quality division of the DNR.

One day later, on September 7, 1983, the acting director approved the Ottawa County Solid Waste Management Plan, which specifically *excluded*

---

[5] MCL 299.425—299.429; MSA 13.29(25)—13.29(29).

plaintiff's landfill on the basis that it was located on a site which was inappropriate for such a waste disposal facility. On September 8, 1983, the acting director denied plaintiff's application for an operating license solely on the basis that he was forbidden to grant the license in light of MCL 299.430(3); MSA 13.29(30)(3), which provides:

> (3) The director shall not issue a license for the development or operation of a new solid waste disposal area or resource recovery facility in a plan area unless the facility complies with and is consistent with an approved solid waste management plan.

On October 6, 1983, plaintiff requested a contested case hearing before the DNR, pursuant to the Michigan Administrative Procedures Act,[6] to challenge the denial of the license. Shortly thereafter, on October 16, 1983, plaintiff received notice from the DNR hearings examiner that, because of a substantial backlog of pending cases, a prehearing conference would probably be set "sometime in the next several months." Before a hearing was scheduled, plaintiff started the instant action in Ingham Circuit Court to compel defendant DNR by preliminary injunction or writ of mandamus to issue plaintiff an operating license and to withdraw approval of the Ottawa County Solid Waste Management Plan until plaintiff's landfill was included in it.

On November 3, 1983, the Ingham Circuit Court issued an order to show cause why the DNR should not grant plaintiff an operating license and, further, why the DNR should not withdraw approval of the Ottawa County Solid Waste Management Plan until the inclusion of the landfill in the plan

---

[6] MCL 24.271; MSA 3.560(171).

or, in the alternative, why the DNR should not be ordered to grant an immediate contested case hearing. Defendant county then filed a motion to intervene, which was granted on December 20, 1983.

Among other motions filed with its initial pleadings, defendant filed a motion to consolidate the within case with the related case still pending in the Ottawa Circuit Court. That motion was denied on January 11, 1984. On January 12, 1984, a hearing was held on the order to show cause and defendant's motion for accelerated judgment based on plaintiff's alleged failure to exhaust administrative remedies.

On April 19, 1985, in a written opinion, Ingham Circuit Judge Giddings denied defendant's motion for accelerated judgment on the grounds that exhaustion of administrative remedies was not required where a dispositive legal issue was present but no significant factual question. Judge Giddings held further that the acting director of the DNR had abused his discretion in refusing to grant plaintiff an operating license before the Ottawa County Solid Waste Management Plan was approved, because the director had no legal basis upon which to refuse to grant the license at that time. He ordered defendant DNR to issue plaintiff an operating license.

On May 14, 1985, plaintiff filed a motion for further equitable and declaratory relief, seeking a declaration that its landfill be declared to be included in the Ottawa County Solid Waste Management Plan as a matter of law. After two hearings on the motion, Judge Giddings ordered that plaintiff's landfill be included in the Ottawa County plan. On July 17, 1985, defendant's motion to stay enforcement of the writ of mandamus and the declaratory judgment was entered. Defendant

county now appeals the trial court's decisions as of right, raising four issues.

First, defendant county claims that the trial court erred in refusing to consolidate the instant case with the Ottawa County case concerning the same landfill. A trial court's decision denying a motion to consolidate is reversible only in case of an abuse of discretion.[7] In its opinion in support of granting a writ of mandamus, the Ingham trial court in the instant case summarized the issues before the two respective courts:

> [T]he questions before the Ottawa Court are:
> 1) whether issuance of the construction permit violates the Michigan Environmental Protection Act; and,
> 2) whether operation of the Pine Valley facility is subject to certain township ordinances.
> The issues here are entirely different and are:
> 1) whether the DNR Director properly approved the Ottawa County Solid Waste Disposal Plan; and,
> 2) whether the DNR Director properly denied Plaintiff an operating licence [sic] for the Pine Valley Facility.

In denying defendant's motion to consolidate, the trial court commented as follows:

> *The Court:* . . . Having read this over, it does seem to me there is an interrelationship of sorts between the questions raised here and the questions raised over there.
> On the other hand as a practical matter, I guess I don't—both questions are going to have to be resolved anyway. Presumably, one court or another is going to have to determine whether or not the construction permit was properly issued,

---

[7] *Papcum v L R Jacobs Construction Co,* 95 Mich App 746, 749; 291 NW2d 191 (1980).

whether or not Plaintiff is entitled to an operator's permit and if there's some dispute with the Township—Well, I don't know that that necessarily has to be resolved in this forum. I don't know that the issuance of the operating permit has to be resolved over there in Ottawa County.

To a great extent my reaction to what I've observed here is that although there's some factual underpinnings, to a great extent what we've got are legal questions here and I guess I have not been and I'm not persuaded that the matter ought to be consolidated. So, the Motion for Consolidation with the Ottawa County case will be denied.

Though stated somewhat vaguely, the trial court's conclusion appears to be that these cases do not present any substantial and controlling common questions of law or fact. The purpose of consolidation is to "promote the convenient administration of justice"[8] and "to avoid needless duplication of time, effort, and expense."[9] In the within case, it would appear that consolidation would have avoided the "needless duplication of time, effort, and expense."

However, while the trial court seems to have been in error in refusing to consolidate the cases, there is little reason at this stage of the proceeding to multiply the "needless duplication of time, effort, and expense" by remanding the case and ordering consolidation. The harm caused by the trial court's error is irreversible. The validity of plaintiff's construction permit must now be specifically addressed in the still-pending Ottawa County suit. If the construction permit is held to be valid, then the holding in the instant case (i.e., that the operating permit was properly denied), if correct,

---

[8] *Blumenthal v Berkley Homes, Inc,* 342 Mich 36, 41; 69 NW2d 183 (1955).

[9] *Papcum, supra,* p 749.

will become relevant and dispositive. There will be little reason to require a second court to relitigate plaintiff's right to an operating license. If the construction permit is invalidated in the Ottawa County suit, then the holding in the instant case will be moot, but that is a result which cannot be avoided even if the instant case were to be remanded for consolidation.

Second, defendant county claims that the trial court erred in deciding the case without a motion for summary judgment having been filed and without holding a full trial on the merits. Under the court rules in effect at the time the complaint was filed, it was permissible to move for a writ of mandamus in the complaint.[10] Defendant's argument that plaintiff needed to file a separate motion for the issuance of a writ of mandamus is, thus, without merit. In this case, plaintiff requested in its complaint that the trial court enter a permanent injunction ordering defendant DNR to grant plaintiff an operating license or, in the alternative, to issue a writ of mandamus ordering defendant DNR to grant plaintiff an operating license.

Defendant county's contention that plaintiff did not pursue a writ of mandamus at the hearing on the order to show cause on January 12, 1984, is equally without merit. A finding that the DNR director improperly refused to perform a ministerial act is one of the requirements for the issuance of a writ of mandamus, and this issue was argued at the hearing. The essence of defendant county's argument appears to be that it was somehow surprised by the possibility that a writ of mandamus might be issued. This argument is not well founded. Not only was a writ of mandamus re-

[10] GCR 1963, 714.2(1), now MCR 3.305(C).

quested in plaintiff's complaint and at the January 12, 1984, hearing, but also the issuance of a writ of mandamus was expressly opposed in defendant county's brief and also in defendant DNR's brief.

Defendant county also contends that the trial court was required to hold a full trial on the merits before granting a writ of mandamus. No more than a hearing is required by GCR 1963, 714.4, now MCR 3.305(F). Defendant county also argues that plaintiff failed to make a showing of the need for immediate action, which is required by the court rules governing mandamus.[11] Plaintiff's need for immediate action was supported by the hundreds of thousands of dollars it had already spent in its good faith effort to bring the landfill into compliance with Act 641 and by the inordinate delay it faced in the administrative appeal due to the backlog of contested case hearings.

Even if the trial court made procedural errors in granting a writ of mandamus, review is precluded where, as here, no objection was made in the trial court to the irregularities and there is no showing that the defendant was prejudiced by those irregularities.[12]

Third, defendant county claims that plaintiff was required to exhaust all administrative remedies before seeking review of the DNR decision in circuit court. While generally a party must exhaust its administrative remedies before a circuit court may review the decision of an administrative agency,[13] a number of exceptions have been carved out of the general exhaustion requirement. One such exception is that exhaustion of administra-

[11] See n 10, *supra.*

[12] See *Bajis v Dearborn,* 151 Mich App 533, 536; 391 NW2d 401 (1986).

[13] MCL 24.301; MSA 3.560(201).

tive remedies is not required where the administrative decision maker is predisposed to rule against the aggrieved party.[14]

The within case is similar to *Trojan v Taylor Twp*[15] and *Welfare Employees Union v Civil Service Comm,*[16] in that the acting director of the DNR made clear his firm conviction that he was legally prohibited from granting the plaintiff an operating license once he approved the Ottawa County Solid Waste Management Plan which specifically excluded plaintiff's landfill. Even though the DNR hearing examiner might have recommended a different result, the ultimate authority for the decision rested with the director.

The trial court based its decision on another exception to the exhaustion requirement, saying:

> There are no significant factual questions here. Primarily, the question is whether the Acting Director could refuse the operating permit on the basis that the facility was not included in the County Plan in accordance with MCLA 299.430; MSA 13.29(30). . . .
>
> Here no purpose is served by requiring Plaintiff to return to the agency for the mere purpose of obtaining the opinion of a hearing officer as to legal matters which ultimately will be reviewed by this Court in any case. There is no reason why this Court should not address those questions forthwith and to require Plaintiff to pursue them before the agency would surely be "useless." The Accelerated Judgment motion of Intervening Plaintiff for failure to exhaust administrative remedies must be denied.

We believe the trial court correctly decided that

---

[14] *Trojan v Taylor Twp,* 352 Mich 636, 638-639; 91 NW2d 9 (1958); *Welfare Employees Union v Civil Service Comm,* 28 Mich App 343, 348-349; 184 NW2d 247 (1970), lv den 384 Mich 824 (1971).

[15] See n 14, *supra.*

[16] See n 14, *supra.*

plaintiff was not required to exhaust its administrative remedies before seeking judicial review.

Fourth, and last, defendant county claims that the trial court erred in granting a writ of mandamus ordering issuance of an operating license for plaintiff's landfill and in granting a declaratory judgment declaring the landfill to be part of the Ottawa County Solid Waste Management Plan. A trial court's decision to grant a writ of mandamus will not be reversed on appeal absent an abuse of discretion, nor will findings of fact underlying the writ of mandamus be set aside unless clearly erroneous.[17]

The testimony of the acting director indicates that the decision to deny plaintiff an operating license was not based on any deviation from the construction permit, the requirements of its rules promulgated pursuant to Act 641, or any environmental concerns. Rather, the acting director based his conclusion entirely on the previously quoted MCL 299.430(3); MSA 13.29(30)(3). However, this statute applies only in the case of "a new solid waste disposal area." The trial court determined that plaintiff's landfill was not a "new facility" within the intent of Act 641 and, thus, that its noninclusion in the county plan was not a proper basis for denial of an operating license. We are inclined to agree. We also note that the DNR may issue an operating license for a landfill even though the landfill is not included in a county waste management plan which has been proposed but not yet approved by the DNR.[18]

If, as the trial court held, it was arbitrary and capricious for the DNR not to grant plaintiff its

[17] Carlson v City of Troy, 90 Mich App 543, 547; 282 NW2d 387 (1979); MCR 2.613(C).

[18] Dafter Twp v Reid, 131 Mich App 283, 290-291; 345 NW2d 689 (1983), lv den 419 Mich 903 (1984).

operating license *before* the Ottawa County Solid Waste Management Plan was approved, then the above statute is no barrier to plaintiff's claim to an operating license. The statute prevents the issuance of an operating license only in the case where there is "an approved solid waste management plan." Whether the landfill is a new waste disposal area would appear to be irrelevant once it is determined that there is no county waste disposal plan yet approved. Thus, only if it is determined that it was proper for the acting director of the DNR to withhold his final decision on the issuance of plaintiff's operating license until *after* he had approved the Ottawa County waste plan does it matter whether plaintiff's landfill was a "new facility," as that term is used in Act 641.

While Act 641 does not define "new facility," the rules promulgated by the DNR under the act do:

> "New facility" means a disposal area that is proposed for construction or an expansion, enlargement, or alteration of an existing disposal area beyond the horizontal or vertical boundaries indicated in the construction permit or on engineering plans approved before January 11, 1979. [1982 AACS, R 299.4104(c).]

In its brief, defendant admits that this is "the correct definition of a new facility." The trial court's observations on the meaning of the phrase "new facility" are accurate and helpful:

> This section encompasses three aspects and defines a new facility as either:
> 1) a disposal area that is proposed for construction; or
> 2) an expansion, enlargement, or alteration of an existing area beyond boundaries indicated in the construction permit; or

3) the expansion, enlargement or alteration of such disposal area beyond boundaries set forth in engineering plans approved before January 11, 1979.

As of September 8, 1983, the date of denial, which date incidently [sic] was many months after construction had been completed and many more following issuance of a construction permit, the disposal area in question cannot possibly be considered one which "is proposed for construction".

Moreover, since the facility was constructed in exacting compliance with the requirements of the construction permit, it does not fall under the second category of an expansion, enlargement or alteration beyond boundaries indicated "in the construction permit". Quite obviously, the third category has no application to this case.

A similar conclusion was reached in *Weber v Orion Twp.*[19] We do not share defendant's belief that the trial court's reliance on *Weber* is misplaced. We find the trial court's following statement persuasive:

Indeed, it makes absolutely no sense to authorize a construction permit and encourage the expenditure of private funds and public oversight resources in constructing a solid waste disposal area, with full knowledge that such area may be inconsistent with and/or denied approval under a county solid waste management plan. The language of the foregoing section and the DNR's rule defining "new facility" clearly evidences the legislative intent that such should not be the case. The Department's recognition of the legislative intent is evidenced by its own Interpretive Statment [sic] 1981-1 of April 28, 1982. In pertinent part, this statement provides:

"(2). Disposal areas which have been issued Construction Permits pursuant to Public Act 641 of

[19] 136 Mich App 689; 358 NW2d 576 (1984), lv den 422 Mich 975 (1986).

1978, as amended, prior to the date the proposed County Solid Waste Management Plan has been submitted for review pursuant to Section 27(d) of the Act, must be included in a County Solid Waste Management Plan."

Since the trial court correctly concluded that the DNR had no legal basis for denying plaintiff's license, there was no error in granting the writ of mandamus ordering the DNR to issue plaintiff an operating license retroactive to September 6, 1983.

However, in the declaratory judgment, the trial court went on to declare plaintiff's landfill to be part of the Ottawa County Solid Waste Management Plan, reasoning that the director of the DNR acknowledged that he could not approve a plan which did not include a licensed facility, so whatever plan is adopted (whether by the county or the director) must include all licensed facilities. Plaintiff's facility is now considered to be a licensed facility as a matter of law and, therefore, there is no basis not to require that plaintiff's landfill be included in the Ottawa County Solid Waste Management Plan as a matter of law. In the trial judge's estimation,

> it would be simply a delaying process to send it back through to possibly get the township and the county to include this on the plan, when, in fact, it has to be included anyway. According to the acting director, he says it has to be included. If that's the case, then there's no reason for us to send it back to see whether it ought to be included because no plan would be approved by him, apparently unless it includes this facility and every other facility that has an operating license.

We believe that in so holding the trial court extended the DNR director's authority beyond that given him under Act 641. If the trial court cor-

rectly decided that the DNR should have granted plaintiff an operating license and approved plans must include all licensed facilities, then the Ottawa County Solid Waste Management Plan is not in compliance with Act 641. However, when faced with such a situation, neither the DNR, nor a court by way of a declaratory judgment, has the statutory authority to immediately and unilaterally revise the plan to bring it into compliance with the act.

Under MCL 299.429(2); MSA 13.29(29)(2), to withdraw approval of a county plan, public hearings must first be held and then, if the director still decides that withdrawal of approval is appropriate, he must "establish a timetable or schedule for compliance [with] the act." The trial judge apparently believed he could sidestep the statutory procedures, since plaintiff's now-licensed facility had to be included on any plan approved in the future.

Before approving the trial court's action, we would want a far more explicit statement of legislative intention than we find here. We believe the better response by the trial court would have been to order the DNR to set a timetable for requiring the local authorities to bring the plan into compliance with the act. If the local authorities refused to comply, then and only then would the director be authorized to draft his own plan, including in it plaintiff's facility.[20]

While such a result may be cumbersome, upholding the trial court's approach would ignore the legislative formula for giving proper deference to the local interests most directly affected by the placement of waste disposal areas. As this Court

---

[20] MCL 299.425, 299.427, 299.428; MSA 13.29(25), 13.29(27), 13.29(28); 1982 AACS, R 299.4701, 299.4702.

observed in *Southeastern Oakland Co Incinerator Authority v Avon Twp:* [21]

> The Legislature contemplated significant local input in the development of county plans. However, once these plans are approved, a cohesive plan of centralized and uniform controls emerge. [Citations omitted].

The very reason plaintiff decided to have the court include its landfill within the county plan is found within MCL 299.430(4); MSA 13.29(30)(4), which provides:

> Following approval by the director of a county solid waste management plan and after July 1, 1981, an ordinance, law, rule, regulation, policy, or practice of a municipality, county, or governmental authority created by statute which prohibits or regulates the location or development of a solid waste disposal area, which is not part of or consistent with the approved solid waste management plan for the county, shall be considered in conflict with this act and shall not be enforceable.

Plaintiff asserted in the trial court that only by being included in the Ottawa County waste plan would local ordinances be preempted and only then would its operating license be meaningful against the "wide spread local opposition to all landfills." Legislatively, the benefit received by local interests for agreeing to explicit statutory preemption of their local landfill regulations was the opportunity to draft their own county waste plan subject to DNR approval. Only in the default of exercising that privilege is the DNR director authorized to impose a plan on local authorities.

Consistent with this opinion, we affirm the trial

[21] 144 Mich App 39, 44; 372 NW2d 678 (1985), lv den 424 Mich 890 (1986).

court's orders and judgment, except that we reverse that part of the declaratory judgment that declares plaintiff's landfill to be part of the Ottawa County Solid Waste Management Plan as a matter of law.

Affirmed in part and reversed in part.