| 143 | 661 |
| f143 | 672 |

</div>

RANSON *v.* CITY OF SAULT STE. MARIE.

<div style="text-align:right">

| 143 | 661 |
| 156 | ³113 |

</div>

1. HIGHWAYS — BRIDGES — POWERS OF MUNICIPALITIES — PUBLIC USE.

   The general power over streets, their grades and maintenance, and over bridges and the manner in which they shall be constructed, which is usually possessed by cities, must be considered with reference to, and is limited by, the purposes and uses of public ways.

2. EMINENT DOMAIN—TAKING PROPERTY—WHAT CONSTITUTES.

   The construction of approaches to a bridge above the level of the street, so that access by vehicles to abutting property is entirely cut off, and pedestrians must descend by a flight of steps, constitutes a taking of the property of the owner.

3. MUNICIPAL CORPORATIONS—STREETS—BRIDGES—LIABILITY FOR
TORTS.

Where a city builds a bridge across a canal and approaches
thereto at a height greatly in excess of that required for
public travel, in accordance with a contract it has made with
the owner of the canal, its acts in so doing are not referable
to any charter power over its streets and bridges, and it is
liable in damages to the owner of abutting property injured
thereby.

Error to Chippewa; Steere, J. Submitted January 11,
1906. (Docket No. 52.) Decided April 30, 1906.

Case by Anna M. Ranson against the city of Sault
Ste. Marie for damages caused by the raising of the
street grade in front of plaintiff's property. There was
judgment for plaintiff, and defendant brings error. Af-
firmed.

Portage avenue is, or was, one of the principal streets
in defendant city. Crossing the street is a canal, known
as the "Water-Power Canal," constructed and controlled
by a private corporation, used to hold and carry water for
power and other purposes for the profit of said private
corporation, which was organized under the provisions of
Act No. 39, Pub. Acts 1883. The relations between the
defendant and said private corporation are stated, and in
some part defined, in the preamble and body of an ordi-
nance known as "Ordinance No. 82 of the City of Sault
Ste. Marie," also as the "Douglas Ordinance," the pro-
visions of which, essential to an understanding of the
questions presented to the court, are here set out:

"An ordinance granting to Edward V. Douglas, of
Philadelphia, Pennsylvania, and his assigns, permission
to deepen, enlarge, improve, and change the course of and
make a diversion from the course of a certain existing
watercourse in the city of Sault Ste. Marie, heretofore es-
tablished for public drainage and sewerage purposes, and
to do other acts in connection therewith.

"*Whereas*, there is a certain existing watercourse
crossing certain streets and alleys of the city of Sault Ste.

Marie, commonly known as the water-power canal, which has been in existence for seven years and upwards and which has been previously established for public drainage and sewerage purposes; and

" *Whereas*, the said watercourse is deemed by the common council of the city of Sault Ste. Marie to be to all intents and purposes an unnavigable natural stream subject to regulation and control as such under the police powers of the city of Sault Ste. Marie; and

" *Whereas*, the city of Sault Ste. Marie has heretofore established said existing watercourse for the purpose of public drainage and sewerage and has accepted and taken upon itself all the burden incident to providing the means of accommodating public travel across said watercourse; and

"*Whereas*, it is the opinion of the common council of said city that it is for the public interest and it is a necessary sanitary measure that said existing watercourse be deepened, enlarged and improved and a diversion made from its present course so as to provide a more direct outlet, and that the rights of the city of Sault Ste. Marie to use the same for public drainage and sewerage purposes be confirmed; and

"*Whereas*, the Lake Superior Power Company, a corporation created and existing under and by virtue of the laws of the Province of Ontario, in the Dominion of Canada, is the owner, except at street crossings, of the land through which said watercourse runs, and also the land through which it is proposed the diversion from said watercourse shall run; and

"*Whereas*, Edward V. Douglas, of Philadelphia, Pennsylvania, by assignment from the said Lake Superior Power Company, has full right to enter upon and occupy the said lands, for the purpose of deepening, enlarging, improving, diverting and changing the course of said watercourse; and

" *Whereas*, the said Edward V. Douglas purposes that he or his assigns shall secure full title to the said lands, and shall deepen, enlarge, improve, divert and change the course of said watercourse and use the same for the development of water power to the extent of at least forty thousand (40,000) hydraulic horse power and other purposes not inconsistent with the rights of the city of Sault Ste. Marie; and

"*Whereas*, the said Edward V. Douglas has filed with

the recorder of the city of Sault Ste. Marie for the approval of the common council of said city, a map showing the lands proposed to be devoted to said improvement and the approximate boundaries and course and direction of said improved watercourse and where it will cross the several streets and alleys of said city of Sault Ste. Marie; and

" *Whereas*, the said Edward V. Douglas seeks from said city of Sault Ste. Marie, for himself and his assigns, the perpetual and continuing right to be held appurtenant to and not alienable from the ownership of the lands herein referred to and designated on said map, to enter upon and occupy for the purposes of locating, constructing and maintaining said watercourse as existing and proposed, such portions of the public streets and alleys of said city as may be necessary for the purpose expressed; and

" *Whereas*, certain other privileges are desired by said Edward V. Douglas deemed necessary to carry out the project referred to:

" *Therefore* the city of Sault Ste. Marie ordains:

" SECTION 1. To Edward V. Douglas, of Philadelphia, Pennsylvania, hereinafter referred to as 'grantee,' is granted the right and privilege of deepening, widening and improving the watercourse in the city of Sault Ste. Marie, commonly known as the water-power canal, at its intersections with the public streets and alleys of the city of Sault Ste. Marie, and to make a deflection from the same at a point east of Kimball street in said city so that it shall have a more direct outlet to the St. Mary's river, and to enter upon and occupy such portions of the public streets and alleys of said city as may be crossed by said watercourse as it now exists and as it shall be deflected and as such crossing shall be represented and set forth on a certain map on file with the recorder of the city of Sault Ste. Marie and heretofore referred to as filed by said grantee, which said map is hereby approved by the common council of the city of Sault Ste. Marie; for the purpose of locating, constructing and operating said watercourse for the purposes of developing said water power and securing beneficial floatage and navigation privileges; subject, however, to such limitations and restrictions as are hereinafter expressed.   *   *   *

" SEC. 8. The said grantee and his assigns shall construct a canal producing at least forty thousand (40,000) hydraulic

horse power, and shall within three years after the passage of this ordinance and forever thereafter provide for that portion of the city of Sault Ste. Marie lying south of said watercourse as proposed to be improved and changed, such access to said watercourse as may be necessary to accommodate the needs of public sewerage and drainage of said portion of said city, through screened discharge pipes to be permanently set into and maintained by said grantee or his assigns, in the south embankment of said watercourse at its intersection with all streets and alleys, or in lieu thereof, if deemed insufficient by the common council for adequate sewerage and drainage, through a trunk sewer to be laid by said grantee or his assigns and to be renewed from time to time as necessity may require, and maintained at a size sufficient to adequately accommodate said sewerage and drainage along the south side of said watercourse, which said trunk sewer shall have an outlet or outlets into said watercourse at such places and also into St. Mary's river as a terminal outlet as said grantee shall provide.

"SEC. 9. In consideration of the fact that the improvement of said watercourse will provide the city of Sault Ste. Marie with permanent sewerage and drainage facilities that will obviate the necessity of the construction and maintenance by said city of a trunk sewer that would involve great expense, the city of Sault Ste. Marie agrees as a condition precedent to its entering upon and enjoying the additional sewerage and drainage facilities afforded by the improvement of said water way, as follows:

"*First.* That upon completion of said construction and within ninety days after written notice thereof given by said grantee or his assigns, of the completion thereof, it will at its own cost and expense remove the bridges maintained across said watercourse during said period of construction, except bridges at Maple street and Hay Lake Road, which shall be removed by grantee.

"*Second.* That all bridges thereafter constructed across said watercourse by said city shall be one-span bridges from crest to crest of the embankment of said watercourse, not exceeding 260 feet, and shall be of a height above said watercourse that will have a clearance above the Lake Superior level of five feet; the Lake Superior level herein referred to being at an elevation of (601.5) six hundred and one and five-tenths feet above New York datum.

" *Third.* That for a period of twenty years after the completion of the improvements of said watercourse as herein proposed, the city of Sault Ste. Marie shall pay to said grantee or his assigns, the full sum of ten thousand dollars per annum, payable on or before the first day of June of each year after the improvements proposed shall have been completed, six thousand dollars of which shall not be payable for any year in which, under the operation of existing laws relating to general taxation, the assessed valuation of the lands occupied by said watercourse and appurtenances thereto and the improvements thereon does not exceed the sum of five hundred thousand dollars: *Provided, however,* That all obligations for said six thousand dollars per annum shall cease in case there shall be passed and approved at the next or any subsequent session of the legislature of the State of Michigan an act putting the company which shall own such properties on a basis of paying specific, in lieu of general, taxes, to be fixed at the sum of one per cent. per annum of the capital stock of said company, which shall not be less than five hundred thousand ($500,000) dollars.

"SEC. 10. The Michigan Lake Superior Power Company as assignee of Edward V. Douglas, grantee hereunder, its successors and assigns, shall furnish all material and labor, and complete ready for use by the city of Sault Ste. Marie in the construction of highway bridges across the said canal, suitable masonry shore abutments for the support of said bridges and their appurtenances at the following street crossings, viz.: On or before August 1, 1901, at the crossing of said canal with Spruce avenue and Johnstone street; on or before October 1, 1901, at the crossing of Fort street and Bingham avenue; on or before July 1, 1902, at the crossing of such other streets as the common council may by resolution designate on or before September 1, 1901.

" Said abutments shall be of such dimensions as may be necessary to properly and safely carry such highway bridge or bridges as may be placed thereon, either in the first instance or at any subsequent time of the width of the bridges at present constructed and under construction: *Provided, however,* If the common council shall hereafter determine to construct bridges of greater width than those at present constructed or planned at Ashmun street, or Fort street, or Portage avenue, the said Michigan Lake Superior Power Company, its successors or assigns, shall

provide for such highway bridge or bridges by such addition to its abutment construction as may be necessary and adequate support for such widened highway bridges; said bridges to be limited to a roadway width of not to exceed 34 feet and all abutments shall be located with face on embankment crest alignment and at right angles with the center line of the bridge and they shall be on such foundations and of such a character and stability as to properly and safely carry such highway bridge or bridges with all the public travel incident thereto including street cars and street railways and the said Michigan Lake Superior Power Company, its successors and assigns shall, after the completion of said abutments and at all times thereafter maintain the same and each and every thereof, including the abutments previously constructed at the crossings of Ashmun street and Portage avenue in said city and including also any addition to any abutments in safe and proper condition, and shall guarantee the suitability, stability and sufficiency of each and all and every part of said abutments to safely carry such bridge or bridges with all the public travel incident thereto, including street railways; and in case said abutments or any thereof or any part thereof, shall prove unsuitable or insufficient or unstable or defective, or give away or in any way become improper or unsuitable or insufficient to carry any such bridge or bridges, with all the public travel incident thereto, including street railways, the said company, its successors or assigns shall replace or repair the same, and if said city shall suffer damages to any bridge or bridges or property, or through valid claims made against it for damages, chargeable in any way to the failure or insufficiency of said abutments or any thereof, said company, its successors or assigns shall pay all such damages, and all costs and charges accruing by reason thereof, whether to a bridge or bridges, or other property or through claims made against the said city, and shall hold said city harmless therefrom: *Provided, however*, That said city, through its common council, upon completion of any bridge or bridges shall provide and continuously maintain by ordinance, regulations for the use of said bridges by the public; prohibiting fast and improper driving thereon and limiting the weight of loads on said bridges to a maximum not to exceed the tested strength of said bridges.

"In case the said company, its successors or assigns, shall fail to fully complete and operate said watercourse

within four years from August 1, 1898, it shall replace all bridges, foot bridges, sidewalks and streets crossing the right of way of said watercourse that may have been displaced or removed by said company, its successors or assigns, and leave the same in as good condition as before said date.

·  " This ordinance is hereby declared to be in the nature of a contract and is declared to apply to all abutments for bridge purposes erected along said canal whether constructed or in course of construction or to be constructed, including the abutments at the intersection of said canal and Ashmun street, Portage avenue, Maple street, Bingham avenue and Johnstone street and all other streets and avenues crossing said canal that may be designated by the common council on or before September 1, 1901, and shall be of no force or effect if said company, its successors or assigns shall fail or neglect to file with the recorder of the city of Sault Ste. Marie their acceptance thereof within thirty days from the approval of this ordinance."

The building of this canal made it necessary to construct a bridge on Portage avenue, and one was built, not on the grade of the street, but above the grade, and, in consequence, the building of approaches thereto became necessary. At this point the canal is 200 feet wide and 20 feet deep. Plaintiff owns premises adjacent to the canal, fronting upon Portage avenue. The approach to the bridge, which is retained by walls built in the street, so occupies the street in front of plaintiff's premises that access thereto, by driving, is entirely cut off, and those traveling on foot must descend from the street by a flight of steps. Snow and water are impounded upon the premises. The charter of defendant provides for the appropriation of private property for public uses, for various purposes, among them " for the construction of bridges," and a method of acquiring such property, by condemnation and for compensation, is adopted. No such proceedings were had or were attempted.

Counsel for appellant state the contention in the following language:

"Plaintiff sues the city as for a continuing trespass and seeks to recover damages to her occupancy occasioned by the construction and maintenance of the embankment approach to this bridge from the time of its construction up to the date of the commencement of this suit.

"Defendant's contention was as follows: In the specific act for which it is sued, viz., the construction of the bridge approach, it was performing a public duty; duly determined upon and ordered under specific and adequate legislative powers conferred upon it by its charter; and, under the law, it cannot be held liable for the consequential damages suffered by plaintiff in consequence thereof.

"The assignments of error relied upon are due to the fact that the trial judge did not accept the applicability of the principle of law above set forth, but took the following position:

"1. He charged in effect that, under the undisputed testimony, the act of the city in constructing the approach was not in pursuance of its public duty, but was to meet the needs of the Water-Power Company, a private corporation, and to fulfill the obligations which the city had assumed in the Douglas ordinance.   *   *   *

"2. He also apparently took the position in his charge and rulings that the construction of the approach was but one act of the whole tort involved in the construction of the canal and building of the bridge at a higher grade than the previous street grade, and that this tort, having been committed by the joint connivance of the municipality and the water-power company, the former was liable as joint tort-feasor and could be sued alone; and, inasmuch as suit had been brought only for the damages occasioned by the bridge approach, he directed the jury to not include the damages occasioned by the construction of the canal."

There was a verdict and judgment for the plaintiff.

*John W. Shine* (*Oren, Webster & Carleton,* of counsel), for appellant

*Warner & Sullivan,* for appellee.

Ostrander, J. (*after stating the facts*).   The construction of the bridge and the approach thereto was made necessary by the excavation for the canal and the mainte-

nance thereof.    The argument for appellant, shortly stated, is that whatever may have preceded the building of the bridge in question and whatever lawful or unlawful action, public or private, created the condition which made the bridge and the approach thereto necessary, inquiry in the plaintiff's case should begin with the condition which was, after the construction of the canal, found to exist, and be confined to the action of the authorities in restoring the street to public travel.    To use the language of the brief:

" One set of municipal officers might wrongfully acquiesce in or license the destruction of a portion of a public street, but could it be said that the act of the succeeding set of officers in devising and carrying out plans for restoring the street would be any less a lawful exercise of municipal authority on account of the original tort ? "

The general power over streets, their grades and maintenance, and over bridges and the manner in which they shall be constructed, which is usually possessed by cities and is possessed by defendant city, must be considered with reference to, and is limited by, the purposes and uses of public ways.    Plaintiff's damage flows from the construction of an embankment by the city which has the effect to destroy, to some extent, her property.    Within repeated decisions of this court, there has been a " taking " of plaintiff's property, and, if we could consider the purpose of the taking a "public purpose," plaintiff was entitled, by the terms of defendant's charter, to compensation.    The city has *taken*, without proceedings to determine either necessity or resulting damage.    So that whether we regard the action of the defendant in erecting the bridge as within or outside of the charter powers, there has been a tortious taking of property.    Whether the action of the city can be sustained as an exercise of charter powers is, however, important, as affecting the measure of the plaintiff's recovery.    If there was mere neglect to condemn and to compensate, then the judgment is wrong. *Harper* v. *City of Detroit,* 110 Mich. 427; *Keyser* v. *Railway Co.,* 142 Mich. 143.    We are of opinion that the

defendant, in causing the bridge to be erected, was not, and did not, in fact, suppose that it was proceeding in the exercise of any charter power of the city over its streets or to erect bridges. See *Dean* v. *Railroad Co.*, 137 Mich. 459. The bridge was erected, and the necessity for it created, because of an ordinance, in form a contract between the city and private parties. The argument made for appellant, that because the bridge was not erected at the height prescribed in the ordinance, it was therefore not built because of the ordinance and the conditions created by proceedings of private parties thereunder, is not satisfying. The record discloses that for the purposes of a way only, the bridge might have been constructed at, or substantially at, the grade of the street. In principle, the case is ruled by *Phelps* v. *City of Detroit*, 120 Mich. 447, as to the right and the measure of recovery.

The judgment is affirmed.

MCALVAY, GRANT, BLAIR, and MONTGOMERY, JJ., concurred.