JONES v EAST LANSING-MERIDIAN WATER AND SEWER
AUTHORITY

Docket No. 45171. Submitted April 10, 1980, at Lansing.—Decided
June 4, 1980. Leave to appeal applied for.

   J. Loren Jones and several others brought an action against the
East Lansing-Meridian Water and Sewer Authority, Meridian
Township, and the City of East Lansing, for damages for
interference with the plaintiffs' water supply. The Authority
owns 25 water wells in East Lansing and Meridian Township,
and the plaintiffs allege that these wells interfere with their
private wells and that the defendants continued to operate the
Authority's wells even after some interference was established.
Plaintiffs allege that the continued operation of the wells is a
nuisance and a taking without just compensation. The Ingham
Circuit Court, Michael G. Harrison, J., ruled that the defen-
dants were not liable to the plaintiffs, finding that the construc-
tion and operation of the Authority's wells was a reasonable
use under the statute allowing municipalities to incorporate
authorities for water and sewer system construction and opera-
tion, and that any interference was slight and was not a taking.
Plaintiffs appeal. *Held:*

   1. There was undisputed testimony that some interference
was caused by the Authority's wells and that the Authority was
on notice that there would be a problem. There was also
testimony that there were available alternatives to drilling the
interfering wells and that the Authority did not investigate
those alternatives. Therefore, it was unreasonable for the Au-
thority to initiate the well-drilling program in disregard of the
effects upon neighboring landowners.

   2. Defendants impressed the plaintiffs' private property into
serving a public use by unreasonably interfering with the

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Eminent Domain § 402.
[2] 26 Am Jur 2d, Eminent Domain §§ 154, 170.
   27 Am Jur 2d, Eminent Domain §§ 266, 279.
   Compensation for, or extent of rights acquired by, taking of land, as
   affected by condemnor's promissory statements as to character or
   use or undertakings to be performed by it. 7 ALR2d 364.

plaintiffs' subterranean water rights. Such action constituted a taking.

Reversed and remanded.

1. PROPERTY — REAL PROPERTY — TAKING.

The governmental use of private property may be unreasonable, even though the purposes for the use are reasonable, if the manner in which those reasonable purposes are accomplished is unreasonable.

2. CONSTITUTIONAL LAW — PROPERTY — REAL PROPERTY — TAKING.

Both the United States and Michigan Constitutions provide that a victim of a taking is entitled to just compensation for the value of the property taken; moreover, it is not necessary that there be a direct physical invasion of the property to invoke the constitutional protection, rather, it is sufficient that the private property has been impressed into serving a public use (US Const, Ams V, XIV; Const 1963, art 10, § 2).

*Starr & Cornell,* for plaintiffs.

Robert H. Scott, plaintiff, *in propria persona.*

*Foster, Swift, Collins & Coey, P.C.* (by *James A. White* and *Michael J. Schmedlen),* for defendants.

Before: D. C. RILEY, P.J., and R. B. BURNS and N. J. KAUFMAN, JJ.

PER CURIAM. Plaintiffs, 107 residents of Meridian Township, brought this action alleging that defendants have interfered with, and will continue to interfere with, their water supply. Both sides agreed to bifurcate the trial, separating the question of liability from that of damages. The trial court ruled in defendants' favor on the liability question, prompting plaintiffs to pursue this appeal.

The East Lansing-Meridian Water and Sewer Authority (hereinafter referred to as the Authority) was established jointly in 1969 by East Lansing and Meridian Township pursuant to 1955 PA

233; MCL 124.281 *et seq.;* MSA 5.2769(51) *et seq.* The Authority owns 25 wells, eight in East Lansing and 17 in Meridian Township. These wells are drilled into an aquifer known as the Saginaw Formation. This aquifer provides the single largest source of potable water for the Authority as well as for the region encompassing Clinton, Eaton and Ingham counties. It is pumped by several major population centers including the City of Lansing, Michigan State University, East Lansing, Delhi Township and Meridian Township.

At the time of formation of the Authority, the respective communities were in the planning stages of water systems improvements. Following its formation, engineering firms were commissioned to conduct studies evaluating future water supplies and sources of water treatment. An engineering report was completed in 1969. It discussed the feasibility and economics of placing Authority wells in North and South Meridian. Economics dictated specific site selections. No inquiry was conducted into the extent these Authority wells would interfere with private wells in the area because of the apparent belief that some interference would be caused no matter where the Authority wells were located.

Well construction was completed pursuant to the report, and wells were placed in operation in July, 1973. Shortly thereafter, certain of the plaintiffs in this action began to experience loss of water, lower water pressure, excessive pumping, and other well problems. Some area residents contacted private concerns to alleviate the conditions, others were assisted by the Authority. The Authority then contracted to have the situation studied. The study was completed in June, 1974. It indicated that certain of the Authority's wells

created an excessive drawdown (depletion) when operated together and that the problems with the private wells in the area were directly caused by the Authority's well operation. The study took into account the indirect effects of regional pumping in determining that pumping in Lansing and at Michigan State University did not cause the interference. Subsequent to receipt of this study, the Authority continued to pump the wells identified as creating the greatest interference.

Plaintiffs' suit arose as a result of the Authority's continued operation of these wells, which plaintiffs challenged as a nuisance, a "taking", and, generally, an unreasonable interference with their subterranean water rights. The trial court found the construction and operation of the Authority's wells a "reasonable use" under the provisions of 1955 PA 233; MCL 124.281 *et seq.;* MSA 5.2769(51) *et seq.* This act permits municipalities to incorporate authorities for the purpose of acquiring, owning, extending, improving and operating sewage disposal systems and water supply systems.[1] In reaching its conclusion, the court relied upon what it found to be the legislative intent in enacting the statute, *viz.,* to provide municipalities with better tools for water and sewer management, and expert testimony to the effect that without proper area-wide water management, serious water problems will occur. The court found that any interference by defendants upon plaintiffs' interests were slight and did not constitute a "taking" or a "nuisance". From these

[1] MCL 124.282; MSA 5.2769(52) provides in pertinent part:

"Any 2 or more municipalities may incorporate an authority for the purpose of acquiring, owning, improving, enlarging, extending and operating a sewage disposal system and/or a water supply system, by the adoption of articles of incorporation by the legislative body of each of the municipalities.

determinations, plaintiffs appeal as of right under GCR 1963, 806.1.

Our review role requires us to consider whether or not the trial court erred in ruling that defendants' activity did not constitute a nuisance or a taking but, instead, represented a reasonable use of the Authority's property. As indicated, the trial court premised its ruling upon 1955 PA 233; MCL 124.281 *et seq.;* MSA 5.2769(51) *et seq.* See footnote 1. The court indicated:

> "This Court is persuaded that the Act was designed to confront the increasingly complex nature of population growth centers and to give municipalities, particularly those in close proximity, better tools with which to embark upon water and sewage management. The Court is also persuaded that when a group of citizens, through their governmental representatives, combine to have a service provided in a manner they determine to be more desirable than acting singly, the product is not transportation elsewhere for consumption."

We agree with the trial court's opinion of the salutary purposes served by the statute. However, we are not prepared to hold that any means are justified if they would achieve these purposes. Even though the purposes may be reasonable, if the manner in which these reasonable purposes are accomplished is unreasonable, the overall use may become unreasonable. Thus, we cannot agree with the trial court's assessment that defendants' project could not have been placed in operation without some interference with private wells, and that such interference would be better capable of measurement after the wells became operational and adjustments were made for proper pumping scheduling.

Testimony was undisputed that some interfer-

ence was caused by the construction and operation of the Authority wells. Also undisputed was that the Authority expected some interference to occur with private wells prior to construction and therefore had notice of the problem before the wells were put into operation. Additionally, substantial evidence was presented that alternatives to drilling the interfering wells were available and that the Authority undertook no analysis of these alternatives and their possible effects on the surrounding lands. The only study the Authority did authorize to consider the effects of their operation on adjoining landowners was conducted after all the wells had been constructed and placed in operation. Yet, experts for plaintiffs and defendants agreed that a hydrologic investigation prior to construction would have revealed the extent of interference.

We find that it was unreasonable for the Authority to initiate a program in complete disregard of the effects its actions had on neighboring landowners, especially where viable alternatives for achieving the same ends were available and might have been discovered and implemented had a proper study been conducted prior to initiation of the program. Plaintiffs' claim is viable under MCL 600.2941(2); MSA 27A.2941(2), which provides in pertinent part:

"Where any well is supplied by a head, reservoir, stratum, or vein or by percolating waters common to other springs or wells, and the owner thereof or his lessee or licensee puts its waters to a use unreasonable or unnecessary, in view of the condition and situation of the land on which it is situated, and through such unreasonable or unnecessary use, lowers or depletes the head, pressure, or supply of water of any spring or well dependent upon the same head, vein, or stratum, to the detriment or injury of the owner or any person entitled

to the use thereof, the well so unreasonably and unnecessarily used, is a nuisance, and its owner and the owner of the land on which it is situated are subject to all the actions for abatement and damages in favor of the person or persons injured, as provided by law for other nuisances or tortious acts."

Plaintiffs also sued on the theory that the actions of the Authority constituted a taking in violation of the Fifth and Fourteenth Amendments of the Federal Constitution and Article 10, Section 2 of Michigan's Constitution. We find this theory equally plausible on the facts of this case. A victim of a taking is entitled to just compensation for the value of the property taken under both the Michigan and United States Constitutions. *Tamulion v State Waterways Commission,* 50 Mich App 60, 66; 212 NW2d 828 (1973). Moreover, it is not necessary that there be a direct physical invasion of the property to invoke the constitutional protection against taking without compensation; it is sufficient that the private property has been impressed into serving a public use, *Tamulion, supra,* 67.

The trial court found neither a taking nor a nuisance, noting that the slight interference defendants caused over a period of five years created neither of those situations. Since we have already determined defendants' interference to be unreasonable, we disagree. Defendants did impress plaintiffs' private property into serving a public use by unreasonably interfering with plaintiffs' subterranean water rights. The trial court erred in ruling to the contrary.

In light of the aforestated conclusions, plaintiffs' remaining allegations do not warrant decisional discussion. This cause is reversed on the issue of defendants' liability for interfering with plaintiffs'

property and remanded for a determination of damages, if any.

Reversed and remanded for proceedings in conformity with this opinion.