## FOX v OGEMAW COUNTY

Docket No. 156257. Submitted September 9, 1994, at Grand Rapids. Decided February 21, 1995, at 9:45 A.M. Leave to appeal sought.

Mary K. Fox and others brought an action in the Ogemaw Circuit Court against Ogemaw County and the Ogemaw County Drain Commissioner, seeking, along with other relief, damages for impairment of the value of the plaintiffs' property when a dam that the defendants were required to maintain burst and allowed Flowage Lake to drain. The defendants raised the affirmative defense of governmental immunity. The plaintiffs responded that the defense of governmental immunity was not available because the failure to keep the dam in good repair and to rebuild the dam immediately constituted the creation of a nuisance by the defendants. The trial court, Carl L. Horn, J., denied the defendants' motion for summary disposition and, following a bench trial, entered a judgment for Mary Fox, the only remaining plaintiff, of $36,950. The defendants appealed.

The Court of Appeals *held:*

1. The loss of the lake water from the plaintiff's real estate, by definition, was not an invasion of her property and, therefore, did not constitute a trespass such as would establish the trespass-nuisance exception to governmental immunity. Neither the exposure of tree stumps nor the reversion of the lake bottom to its natural lakeless state, with the consequent restoration of an insect habitat, constituted a trespass-nuisance.

2. Assuming that there is a nuisance per se exception to governmental immunity, the return of the plaintiff's property to its original lakeless state is neither intrinsically unreasonable nor a condition that is dangerous at all times and under all circumstances and, thus, would not constitute a nuisance per se.

Reversed.

GRIFFIN, J., dissenting, stated that the condition created by

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability § 160.

Comment Note.—Municipal immunity from liability for torts. 60 ALR2d 1198.

the collapse of the dam unreasonably interfered with the plaintiff's use and enjoyment of her property and constituted a nuisance that is not subject to the defense of governmental immunity. The nuisance constituted an unconstitutional governmental taking of the property without compensation.

Nuisance — Governmental Immunity — Trespass-Nuisance — Nuisance Per Se — Dams.

The draining of an artificial lake as the result of the failure of a governmental body to maintain the dam that created the lake and thereby to allow the area where the lake had been to return to its original natural state does not constitute either a trespass-nuisance or nuisance per se such as will defeat a claim of governmental immunity by the governmental body in an action by adjoining property owners for diminution of property values because of the absence of the lake (MCL 691.1407[1]; MSA 3.996[107][1]).

*Jensen, Smith & Gilbert, P.C.* (by *Jill K. Smith*), for the plaintiff.

*Richard L. Alger, Jr.,* for the defendants.

Before: MacKenzie, P.J., and Griffin and M. J. Talbot,* JJ.

MacKenzie, P.J. Defendants appeal as of right from a judgment that found them liable to plaintiff Mary K. Fox (hereinafter plaintiff) in the amount of $36,950 for creating a nuisance. We reverse.

In order to establish a claim that falls within the nuisance exception to governmental immunity, plaintiff had to prove the existence of a trespass-nuisance or (although a majority of the Supreme Court has yet to decide the question) a nuisance per se. *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988); *Li v Feldt (After Second Remand),* 439 Mich 457; 487 NW2d 127 (1992).

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff's trial testimony established that she was the developer of several lakefront lots on an inland lake known as Flowage Lake. Flowage Lake was an artificial lake created by damming a section of the Rifle River. In 1985, the dam, which was maintained by defendants, gave way, and Flowage Lake was completely drained. Drainage of the lake exposed tree stumps and allowed mosquitoes and flies to breed. As a result of this lawsuit, defendants agreed to rebuild the dam. However, while the lake was drained, the value of plaintiff's lots was diminished. Plaintiff testified that she sold several lots at reduced prices because the lake had been drained.

On these facts, the trial court clearly erred in finding defendants liable for creating a nuisance. The Supreme Court has defined a trespass-nuisance as "a direct trespass upon, or the interference with the use or enjoyment of, land that results from a physical intrusion caused by, or under the control of, a governmental entity." *Hadfield, supra,* p 145. The loss of the lake water from plaintiff's real estate, by definition, was not an invasion of her property and, therefore, did not constitute a trespass. *Peterman v Dep't of Natural Resources,* 446 Mich 177, 207; 521 NW2d 499 (1994). Similarly, the exposure of existing tree stumps was not an invasion of the property and thus not a trespass. Plaintiff argues that the presence of insects constitutes a trespass, citing *Trowbridge v Lansing,* 237 Mich 402; 212 NW 73 (1927). However, a close reading of that case confirms that the Supreme Court's most recent characterization of that case was as a case primarily involving the production of pervasive sickening odors. See *Peterman, supra,* p 206. Here, there was no evidence of such pervasive, sickening odors. Furthermore, we decline to hold that the reversion of

the property to its naturally lakeless state, and the consequent restoration of insect habitat, constituted a trespass-nuisance.

Assuming the existence of a nuisance per se exception to governmental immunity, see *Li, supra,* we also conclude that the trial court's finding of a nuisance was clearly erroneous. A nuisance per se is "an activity or condition which constitutes a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained." *Li, supra,* pp 476-477 (opinion of CAVANAGH, C.J.). "[U]nlike the nuisance in fact, nuisance per se is not predicated on the want of care, but is unreasonable by its very nature." *Hadfield, supra,* p 208 (opinion of BOYLE, J.). The return of plaintiff's property to its natural state, lacking an artificial lake, is not intrinsically "unreasonable," nor does it constitute a condition that is dangerous at all times and under all circumstances.

From a review of the trial transcript, it is apparent that the "nuisance" proven by plaintiff was that, until the dam was repaired and the area once again artificially flooded, her real estate could not be marketed and sold as lakefront property. Because plaintiff failed to establish either a trespass-nuisance or a nuisance per se, the trial court clearly erred in finding defendants liable to her for damages; they were immune from liability under § 7(1) of the governmental tort liability act, MCL 691.1407(1); MSA 3.996(107)(1).

Reversed.

M. J. TALBOT, J., concurred.

GRIFFIN, J. *(dissenting).* I respectfully dissent. The lower court did not clearly err in finding a nuisance and in assessing damages against defen-

dants. The condition created as a result of the collapse of the dam unreasonably interfered with plaintiff's use and enjoyment of her property. The damage to plaintiff's property was serious and substantial. Irrespective of how the nuisance is categorized, I would hold that there is no governmental immunity in this instance. In my view, plaintiff has pleaded and proved a nuisance for which she is entitled to compensation by virtue of the "taking" clauses of the Michigan Constitution, Const 1963, art 10, § 2, and the United States Constitution, US Const, Am V and Am XIV.

While I would construe § 7 of the governmental immunity statute, MCL 691.1407; MSA 3.996(107), as coextensive with the taking clauses, see *Yarrick v Kent City,* 180 Mich App 410, 416-422; 447 NW2d 803 (1989), vacated 435 Mich 866 (1990) (GRIFFIN, J., concurring in part and dissenting in part), I recognize that a majority of the Supreme Court has adopted a historical common-law approach in determining exceptions to immunity under § 7 of the statute. *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988); *Li v Feldt (After Second Remand),* 439 Mich 457; 487 NW2d 127 (1992). However, neither *Hadfield* nor *Li* dealt with immunity exceptions based upon constitutional guarantees.

In *In re Urban Renewal, Elmwood Park Project,* 376 Mich 311, 315-316; 136 NW2d 896 (1965), the Supreme Court summarized various conditions for which the government has been held liable for damages under the taking clauses:

> Appellant concedes that generally the "taking" is construed in its literal sense, that is, after verdict is confirmed, the deed executed and award paid; but contends that there are unusual situations where the action of the city or other govern-

mental body is such as to amount to a taking of private property, even though there is no eminent domain proceeding, and that in such situations compensation is given for the taking when it occurs. He cites *Pearsall v Board of Supervisors of Eaton County,* 74 Mich 558 [42 NW 77 (1889)], a road closing case;[2] *Ranson v City of Sault Ste Marie,* 143 Mich 661 [107 NW 439 (1906)], a similar case in which the city restricted access to plaintiff's property; *Grand Trunk Western Railroad Co v City of Detroit,* 326 Mich 387 [40 NW2d 195 (1949)], a case where the city attempted to reduce the value of land by restrictive zoning; and *Long v City of Highland Park,* 329 Mich 146 [45 NW2d 10 (1950)], a similar zoning case.

Appellee concedes that in cases where property has been flooded because of public construction, the use and enjoyment of land reduced because of ear-rending noise of jet propulsion flights, or where ingress and egress has been made impossible by highway improvements, a taking will be held to have occurred. *Cereghino v State Highway Commission,* 230 Or 439; 370 P2d 694 [(1962)]; *Bacon v United States,* 295 F2d 936 [(Ct Cl, 1961)]; *Johnson v Airport Authority of the City of Omaha,* 173 Neb 801; 115 NW2d 426 [(1962)].

---

[2] "The term 'taking' should not be used in an unreasonable or narrow sense. It should not be limited to the absolute conversion of property, and applied to land only; but it should include cases where the value is destroyed by the action of the government, or serious injury is inflicted to the property itself, or exclusion of the owner from its enjoyment, or from any of the appurtenances thereto. . . .

"If the public take any action which becomes necessary to subserve public use, and valuable rights of an individual are thereby interfered with, and damaged or destroyed, he is entitled to the compensation which the Constitution gives therefor, and such damage or destruction must be regarded as a 'taking.' " (p 561.)

---

Later, in *Hart v Detroit,* 416 Mich 488, 500; 331 NW2d 438 (1982), the Supreme Court reiterated that a total conversion of property is not necessary for the occurrence of a "taking":

We agree that a "taking" of property may be the end result of serious injury to and diminution in the value of real property. *Thom v State Highway Comm'r*, 376 Mich 608; 138 NW2d 322 (1965). "Taking" is a term of art with respect to the constitutional right to just compensation and does not necessarily mean the actual and total conversion of the property. Whether a "taking" occurs for which compensation is due depends on the facts and circumstances of each case. *Thom, supra; Heinrich v Detroit*, 90 Mich App 692; 282 NW2d 448 (1979).

While in many cases against the government the plaintiff pleads both "nuisance" and an unconstitutional taking, see, e.g., *Jones v East Lansing-Meridian Water & Sewer Authority*, 98 Mich App 104; 296 NW2d 202 (1980), I do not believe that such alternative pleadings necessarily are required, particularly in this instance in which the government's continuation of the nuisance resulted in the partial taking of the plaintiff's property.

The majority concludes that governmental defendants are immune from liability because there was no physical intrusion or invasion of plaintiff's property. I disagree with this factual assertion[1] and find unpersuasive the majority's attempt to

---

[1] The evidence of nuisance adduced at trial included the following portions of plaintiff's testimony:

*Q.* Did you have the opportunity to look at the lake after the dam had failed?

*A.* Absolutely.

*Q.* Would you describe to the judge how it looked?

*A.* It was a horrible sight, all those fish flopping around. We were just fortunate that no one was killed there.

*Q.* Were you ever—did you ever observe any problem with insects since the dam had failed?

*A.* Yes.

*Q.* What problems were there?

distinguish *Trowbridge v Lansing,* 237 Mich 402; 212 NW 73 (1927).

More importantly, the premise that a governmental entity cannot be liable for damages absent a physical invasion is legally erroneous. In *Tamulion v State Waterways Comm,* 50 Mich App 60; 212 NW2d 828 (1973), the plaintiffs sued the state for damages to plaintiffs' property after the state constructed breakwaters at the entrance of a Lake Superior harbor. The state dumped tons of jagged rocks and boulders along the plaintiffs' beach in an effort to remedy erosion created by the breakwater. The rocks and debris made access to the lake from the plaintiffs' property virtually impossible. In *Tamulion,* this Court held that the plaintiffs' were entitled to compensation against the

*A.* Mosquitoes, flies, little chi-chi flies, I believe they call them, get into the people's homes.

*Q.* Was there a problem with odor?

*A.* Yes, terrible.

*Q.* Would you describe what the lake bed looked like?

*A.* After it went out there were fish lying all around plus the muck in there and the stumps sticking out of there, and it was a mess.

*Q.* Have the fish been cleaned up since the dam failed?

*A.* Yes.

*Q.* Would you describe what the lake looks like today?

*A.* Today it's still a mess. I understand the DNR seeded that with rye, and I don't believe they have been back since; so it is just all weedy.

*Q.* Have the stumps been cleared?

*A.* No, they haven't.

*Q.* To your knowledge, has anything been done to abate any insect problem?

*A.* To my knowledge, no.

*Q.* Would children or anyone be able to play or have any type of activity in the lake bed?

*A.* I wouldn't want my children playing in it.

*Q.* Why not?

*A.* Because I think it is dangerous the way it is.

*Q.* Why is it dangerous the way it is?

*A.* With all those stumps sticking out of there, and those weeds are about that tall (indicated). A child could get lost out in there. . . .

state for the partial taking of their property, despite the fact that no direct physical invasion of the plaintiffs' land had occurred.

Later, *Tamulion* was followed by this Court in *Jones, supra.* In *Jones,* a group of Meridian Township residents sued the defendant township, claiming that the township's wells unreasonably interfered with the plaintiffs' private wells, causing the plaintiffs to suffer loss of water, low water pressure, excessive pumping, and other well problems. The plaintiffs alleged that the defendant's conduct was both a nuisance and an unconstitutional taking. On appeal, this Court found that the township's conduct was unreasonable and that the plaintiffs were entitled to damages under either theory. After finding sufficient evidence of nuisance, we stated:

> Plaintiffs also sued on the theory that the actions of the Authority constituted a taking in violation of the Fifth and Fourteenth Amendments of the Federal Constitution and Article 10, Section 2 of Michigan's Constitution. We find this theory equally plausible on the facts of this case. A victim of a taking is entitled to just compensation for the value of the property taken under both the Michigan and United States Constitutions. *Tamulion v State Waterways Comm,* 50 Mich App 60, 66; 212 NW2d 828 (1973). Moreover, it is not necessary that there be a direct physical invasion of the property to invoke the constitutional protection against taking without compensation; it is sufficient that the private property has been impressed into serving a public use, *Tamulion, supra,* 67.
>
> The trial court found neither a taking nor a nuisance, noting that the slight interference defendants caused over a period of five years created neither of those situations. Since we have already determined defendants' interference to be unreasonable, we disagree. Defendants did impress

plaintiffs' private property into serving a public use by unreasonably interfering with plaintiffs' subterranean water rights. The trial court erred in ruling to the contrary. [*Jones, supra* p 110.]

Finally, in *Electro-Tech, Inc v H F Campbell Co,* 433 Mich 57, 91, n 38; 445 NW2d 61 (1989), the Supreme Court cited *Tamulion, supra,* with approval for the proposition that the governmental immunity statute does not bar claims arising out of an unconstitutional taking. As stated by the Supreme Court, "[s]ince the obligation to pay just compensation arises under the constitution and not in tort, the immunity doctrine does not insulate the government from liability." *Id.*

On the basis of the above authorities, I would affirm and hold that the lower court did not clearly err in finding a recoverable nuisance and in assessing damages. By operation of the taking clauses of both the Michigan and United States Constitutions, defendants are not immune from liability for the nuisance they have created.