# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS JAMES. KOWALCHUK and All
Others Similarly Situated,

        Plaintiffs-Appellants,

v

CITY OF JACKSON,

        Defendant-Appellee.

UNPUBLISHED
May 23, 2017

No. 330463
Jackson Circuit Court
LC No. 14-001126-CZ

Before: GADOLA P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order denying their motions for class certification and for a writ of mandamus, as well as the trial court's order granting defendant's motions for reconsideration and for summary disposition. We affirm.

This case involves four water-utility wells that defendant operates in Sharp Park. These wells were the subject of separate litigation filed in 2010 by Doris Gaskin and Coretta Sisson, who owned property near the wells. The plaintiffs in that case alleged that the defendant's groundwater withdrawals from these wells had caused structural damage to their homes and surrounding land from subsidence. *Gaskin v City of Jackson*, unpublished opinion per curiam of the Court of Appeals, issued July 12, 2012 (Docket No. 303245), pp 1-2. The trial court denied the defendant's motion for summary disposition, and this Court affirmed in part and reversed in part, and remanded the matter for further proceedings. *Id*. at 10. Upon remand, a jury ultimately rejected the claim that defendant had caused the damages alleged in the *Gaskin* lawsuit, and the trial court thereafter granted defendant summary disposition of the plaintiffs' claim for mandamus.

Plaintiff Thomas Kowalchuk owns land within the area determined to be potentially affected by the operation of the wells. In 2014, he initiated this case by filing a complaint for mandamus on behalf of himself, several named others, and all others similarly situated. Plaintiffs contend that defendant's pumping of groundwater from the four wells in Sharp Park is depriving plaintiffs, without just compensation, of their own right to reasonably use the groundwater beneath and surrounding their properties.

In the complaint, plaintiffs sought a writ of mandamus "to resolve the condemnation claim in accordance with the administrative procedures in the Uniform Condemnation

-1-

Procedures Act ("UCPA"), MCL 213.51 *et seq*." The complaint further alleges that the UCPA requires defendant to "submit a written good-faith offer for the value of the groundwater taken in excess of [defendant's] fair participation." Along with the complaint for mandamus, plaintiffs filed a motion to certify the class and a motion for summary disposition pursuant to MCR 2.116(C)(10). Defendant also moved for summary disposition, arguing that because the jury in *Gaskin* ultimately rejected the claim that defendant had caused the damages alleged, plaintiffs' claims in this case similarly were without factual support.

Initially, the trial court in this case denied defendant's motion for summary disposition, but also held that plaintiffs were not entitled to a writ of mandamus to compel defendant to initiate condemnation proceedings under the UCPA. The trial court reasoned that the UCPA applies only if a government agency actually acquires private property; because groundwater is not subject to exclusive ownership, defendant had not acquired plaintiffs' private property. The trial court also denied plaintiffs' motion for class certification, ruling that they had not established the elements of numerosity, commonality, or typicality required under MCR 3.501. On defendant's motion for reconsideration, the trial court granted defendant summary disposition in light of its ruling that plaintiffs were not entitled to a writ of mandamus.

On appeal, plaintiffs contend that the trial court erred by determining that (1) groundwater is not subject to exclusive ownership rights, (2) defendant has no duty to proceed under the UCPA, (3) absent a proceeding under the UCPA, the trial court lacked subject matter jurisdiction of plaintiffs' claim, and that (4) plaintiffs have not demonstrated the elements necessary for class certification.

## I. GROUNDWATER OWNERSHIP

Plaintiffs first argue that the trial court erred when it determined that groundwater[1] is not subject to exclusive ownership rights. We disagree. Questions relating to the nature of ownership rights in groundwater involve the proper scope and application of the common law, which we review de novo. See *Mich Citizens for Water Conservation v Nestlé Waters North America Inc*, 269 Mich App 25, 53-54; 709 NW2d 174 (2005)(opinion by SMOLENSKI, J.), aff'd in part, rev'd in part 479 Mich 280 (2007).

In Michigan, the use of "percolating" water is governed by the underlying concept known as "reasonable use" adopted in *Schenk v Ann Arbor*, 196 Mich 75; 163 NW 109 (1917). See *US Aviex Co v Travelers Ins Co*, 125 Mich App 579, 590; 336 NW2d 838 (1983). In adopting the reasonable use rule, the *Schenck* Court permitted use of percolating water by the landowner as long as that use does not interfere with the reasonable use by another person of water beneath that person's land. *Id*. at 591. The reasonable use rule as adopted in *Schenck* clearly rejects the right of absolute ownership of percolating groundwater. See *Mich Citizens*, 269 Mich App at 60-

---

[1] Interestingly, defendant argues on appeal that evidence indicates that the wells are not pumping groundwater but are instead pumping water from a contained bedrock aquifer, known as the Marshall Sandstone aquifer, located hundreds of feet beneath plaintiffs' properties. The trial court resolved this case without reaching this question, however, and we need not reach it here.

61. Contrary to plaintiffs' argument, *Schenk* does not stand for the proposition that ownership of groundwater is exclusive in Michigan, nor that any municipal withdrawal of groundwater entitles a landowner to compensation for its fair value. *Id.* Similarly, although this Court in *Jones v East Lansing-Meridian Water & Sewer Auth*, 98 Mich App 104; 296 NW2d 202 (1980), recognized that a municipality's withdrawals of groundwater could give rise to a takings claim, *id.* at 110, the holding in that case was based on the fact that the withdrawals had *unreasonably* interfered with the plaintiffs' subterranean water rights, causing those plaintffs to experience loss of the ability to pump water. *Id.* at 110.

More recently, in *Mich Citizens*, this Court reaffirmed that Michigan does not follow the rule of "absolute ownership" developed under English common law, nor does it strictly follow a traditional reasonable use rule. Rather, Michigan law on groundwater use applies a "reasonable use balancing test" that seeks to "ensure the greatest possible access to water resources for all users while protecting certain traditional water uses." *Id.* at 58, 67-68. The reasonable use balancing test seeks to (1) ensure "fair participation" in the use of water for the greatest number of users, (2) protect only reasonable uses, and (3) redress only unreasonable harms. *Id.* at 69. This Court in *Mich Citizens* noted that the factors applicable should be ascertained case by case, but also set forth factors relevant to every application of the reasonable-use balancing test. *Mich Citizens*, 269 Mich App at 71. These factors are:

> (1) the purpose of the use, (2) the suitability of the use to the location, (3) the extent and amount of the harm, (4) the benefits of the use, (5) the necessity of the amount and manner of the water use, and (6) any other factor that may bear on the reasonableness of the use. [*Id.*]

In this case, plaintiffs allege that defendant committed a taking by using the four Sharp Park wells to pump groundwater from underneath their properties. But, as the circuit court held in this case, plaintiffs do not own the water under their properties; instead plaintiffs are entitled to reasonable use of the water, as determined by the reasonable use balancing test. Defendant, too, is entitled to the reasonable use of the groundwater as long as its use does not interfere with plaintiffs' reasonable use. Thus, the groundwater itself is not plaintiffs' private property, and defendant does not acquire private property by reasonable use of the water. Accordingly, plaintiffs' argument that the trial court erred by concluding that groundwater is not subject to exclusive ownership rights is without merit.

## II. MANDAMUS CLAIM

Plaintiffs next contend that the trial court erred by denying their motion to compel defendant to bring a condemnation action under the UCPA for their groundwater withdrawals. We disagree. To establish entitlement to the extraordinary remedy of a writ of mandamus, a plaintiff has the burden of establishing that "(1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform such act, (3) the act is ministerial in nature such that it involves no discretion or judgment, and (4) the plaintiff has no other adequate legal or equitable remedy." *Barrow v Detroit Election Comm*, 301 Mich App 404, 411-412; 836 NW2d 498 (2013). We review the trial court's decision regarding whether to issue a writ of mandamus for an abuse of discretion,

while reviewing underlying questions of law de novo. *Younkin v Zimmer*, 497 Mich 7, 9; 857 NW2d 244 (2014).

The UCPA was enacted in 1980 to replace the state's multiple condemnation statutes with a single statute governing the acquisition of property by eminent domain. *State Hwy Comm v Biltmore Investment Co, Inc*, 156 Mich App 768, 775; 401 NW2d 922 (1987), citing House Legislative Analysis, HB 4652, June 19, 1980. A governmental agency is required to tender a good-faith offer to acquire private property before initiating litigation. MCL 213.55(1); *In re Acquisition of Land for the Central Indus Park Project*, 177 Mich App 11, 17; 441 NW2d 27 (1989). MCL 213.52(2) provides in part that "[i]f property is to be acquired by an agency through the exercise of its power of eminent domain, the agency shall commence a condemnation action for that purpose." The term "property" is defined to include "property rights whether real, personal, or mixed, including fluid mineral and gas rights." MCL 213.51(i).

Here, plaintiffs argue that they have a clear legal right to compel defendant to bring a condemnation action under the UCPA for its use of groundwater, and that defendant has a clear legal duty to bring such an action. Plaintiffs rely on *Miller Bros v Dep't of Natural Resources*, 203 Mich App 674, 689-690; 513 NW2d 217 (1994). In *Miller Bros*, the director of the Department of Natural Resources designated 4,500 acres as the Nordhouse Dunes Area, determined that any oil and gas development in the area would constitute waste prohibited by law, MCL 319.4, and further determined that no oil or gas exploration or development would be permitted in the area. The plaintiffs, owners and lessees of oil and gas rights in the protected area, filed an inverse condemnation action against the DNR, claiming that the director's decision effectively took their property from them. *Id*. at 678-679. The trial court granted the plaintiffs summary disposition, finding that a taking had occurred. This Court affirmed, stating "[w]hen the state converts private property for its own use without first paying for it, it is not only acting unconstitutionally, it is also violating the UCPA by acquiring property without complying with that statute's exclusive procedures." *Id*. at 689-690. In a footnote, this Court stated: "In such a situation, property owners not only have a right to 'just compensation,' they also have a right to force the state to proceed under the UCPA." *Id*. at 690 n 8. Plaintiffs rely on these two statements from *Miller Bros* in support of their argument that they have a right to compel defendant to proceed under the UCPA.

But in *Miller Bros*, the plaintiffs were owners and lessees of oil and gas rights who had purchased those rights and a monetary value could be assigned to those rights. By contrast, plaintiffs in this case do not exclusively own the groundwater beneath their properties. Moreover, plaintiffs in this case have offered no evidence that they have been deprived of their groundwater. For example, plaintiffs do not contend that they have wells being adversely affected by defendant's use, and in fact, plaintiffs in this case rely upon the municipal water system for their water. In sum, plaintiffs have not established a property right that would entitle them to just compensation, nor have they established a taking by defendant. Therefore, plaintiffs do not have the right to force defendant to proceed under the UCPA and defendant does not have a clear legal duty to initiate proceedings under the UCPA. Accordingly, the trial court properly denied plaintiffs' claim for mandamus. *Younkin*, 497 Mich at 9.

## III. SUBJECT-MATTER JURISDICTION

Plaintiffs next argue that the trial court did not have subject-matter jurisdiction in this matter unless proceeding under the UCPA, which required defendant to first submit a written good-faith offer to plaintiffs before filing a complaint. Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 559; 840 NW2d 375 (2013).

Subject-matter jurisdiction is a court's "abstract power to try a case of the kind or character of the one pending." *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 204; 631 NW2d 733 (2001), quoting *Campbell v St John Hosp*, 434 Mich 608, 613-614; 455 NW2d 695 (1990). Plaintiffs maintain that the character of the case they brought involves condemnation, and therefore can only be decided under the UCPA. However, plaintiffs complaint sought only a writ of mandamus; it did not include a claim for condemnation. The circuit court had subject-matter jurisdiction to hear plaintiff's mandamus claim under the Michigan Constitution, which gives circuit courts "original jurisdiction in all matters not prohibited by law" and the "power to issue, hear and determine prerogative and remedial writs[.]" Const 1963, art 6, § 13; see also *LeRoux v Secretary of State*, 465 Mich 594, 606; 640 NW2d 849 (2002) (explaining that "prerogative and remedial writs" include writs of mandamus). Accordingly, plaintiffs' argument that the trial court lacked subject matter is without merit.

## IV. CLASS CERTIFICATION

Finally, plaintiffs argue that the trial court erred by ruling that they had failed to meet the requirements for class certification. We disagree. The trial court's discretionary rulings regarding whether to certify a class are reviewed for an abuse of discretion, and its findings of fact are reviewed for clear error. *Doe v Henry Ford Health Sys*, 308 Mich 592, 597; 865 NW2d 915 (2014). A finding is clearly erroneous if a review of the entire record leaves the reviewing court with a definite and firm conviction that the trial court made a mistake. *Duskin v Dep't of Human Servs*, 304 Mich App 645, 651; 848 NW2d 455 (2014).

MCR 3.501(A)(1) provides that a member of a class may only sue as a representative party of that class if the following circumstances exist:

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d) the representative parties will fairly and adequately assert and protect the interests of the class; and

(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

These conditions are often referred to as "numerosity, commonality, typicality, adequacy, and superiority." *Henry v Dow Chem Co*, 484 Mich 483, 488; 772 NW2d 301 (2009). "[A] party seeking class certification is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied." *Id*. at 502. "[T]he action must meet all the requirements in MCR 3.501(A)(1); a case cannot proceed as a class action when it satisfies only some, or even most, of these factors." *A & M Supply Co v Microsoft Corp*, 252 Mich App 580, 597, 654 NW2d 572 (2002).

Plaintiffs argue that the trial court abused its discretion by concluding that it had failed to meet the numerosity requirement of MCR 3.501(A)(1)(a). Although there is no particular minimum number of members necessary to meet the numerosity requirement, and the exact number of members need not be known, "the plaintiff must adequately define the class so potential members can be identified and must present some evidence of the number of class members or otherwise establish by reasonable estimate the number of class members." *Zine v Chrysler Corp*, 236 Mich App 261, 288; 600 NW2d 384 (1999). The plaintiff must also establish "that a sizeable number of class members have suffered an actual injury." *Duskin*, 304 Mich App at 653.

In this case, plaintiffs' argument appears to be premised on the notion that defendant's taking of any groundwater sufficed to show an actual injury that required compensation for the value of the groundwater taken. However, as discussed, to support a claim that defendant's use of groundwater constituted a taking that required it to provide just compensation through the procedures set forth in the UCPA, plaintiffs were required to show not just that defendant had used the groundwater, but that its use was unreasonable, i.e., exceeded its fair participation.

Accordingly, although plaintiffs insist that they are not seeking just compensation for damages but rather for the value of the groundwater, the determination whether defendant's use was unreasonable nevertheless requires an inquiry into whether the individual plaintiffs incurred damage as a result of defendant's use. See *Mich Citizens*, 269 Mich App at 71. Because plaintiffs did not show that "a sizeable number of class members . . . suffered an actual injury" from defendant's use of groundwater, the trial court did not abuse its discretion by determining that plaintiffs had not met the numerosity requirement of MCR 3.501(A)(1)(a). *Duskin*, 304 Mich App at 653. Because plaintiffs were required to establish all five of the prerequisites for class certification, we need not reach plaintiffs' arguments regarding the remaining factors. *A & M Supply Co*, 252 Mich App at 597.

Affirmed.


/s/ Michael F. Gadola
/s/ Henry William Saad

-6-