HAAKSMA v CITY OF GRAND RAPIDS

Docket No. 222450. Submitted March 7, 2001, at Grand Rapids. Decided July 24, 2001 at 9:15 A.M. Leave to appeal sought.

Barbara Haaksma brought an action in the Kent Circuit Court against the city of Grand Rapids and Fryling Development Corporation, seeking damages for injuries allegedly caused by her stepping on exposed electrical wires while walking on a public right of way that was owned and maintained by the city. The wires protruded from a pedestal that had held a lamppost that had been knocked down several weeks before the incident at issue. About a month before the incident, Ronald Minnie, maintenance director of a building owned by defendant Fryling, saw that a lamppost that was located on a public sidewalk that was between a parking lot owned by the city and a building owned by Fryling had been knocked down, leaving exposed wires. Minnie had an electrician cap the wires with wire nuts, tape them with electrical tape, cover the wires with a plastic bag, and cover the pedestal with an orange cone. The plaintiff claimed that at the time of her injury the wires were exposed and that she suffered a severe electrical shock that resulted in permanent injuries. The plaintiff alleged that the sidewalk and light fixture were owned and controlled by the city or Fryling, that Fryling was liable on the basis of permitting a dangerous condition to exist, and that the city was liable under the public highway and nuisance per se exceptions to statutory governmental immunity. The court, Paul J. Sullivan, J., granted summary disposition for the city on the basis of governmental immunity, holding that neither the public highway nor the nuisance per se exception applied. The court, Robert J. Benson, J., acting for Judge Sullivan, granted summary disposition for Fryling, holding that the city, not Fryling, had the duty to make permanent repairs to the fallen lamppost and that Fryling's temporary repairs neither created a new hazard nor made the area more hazardous. The plaintiff appealed.

The Court of Appeals *held*:

1. MCL 691.1407(1) provides that a governmental agency that is engaged in the exercise or discharge of a governmental function is immune from tort liability except as otherwise provided in the governmental immunity act. MCL 691.1402(1) provides that a govern-

mental agency having jurisdiction over a highway must maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel and that any person who sustains bodily injury or damage by reason of the failure of a governmental agency to so maintain a highway may recover damages from the governmental agency. MCL 691.1401(e) defines a highway for the purpose of the governmental immunity act as "every highway, road, and street," including "sidewalks, crosswalks, and culverts on any highway."

2. The phrase "sidewalks . . . on any highway" has been construed to mean a sidewalk that runs alongside a public highway. Because the sidewalk in question ran alongside a municipal parking lot rather than alongside a public highway, it did not fall within the highway exception to governmental immunity. The fact that the particular sidewalk may have been part of an interconnected sidewalk system, parts of which might run parallel to a highway and thus fall within the scope of the highway exception, does not bring the portion of the sidewalk at the site of the plaintiff's injury within the scope of the highway exception. Accordingly, the trial court correctly held that the highway exception to governmental immunity did not apply and that the city therefore was not liable for the plaintiff's injuries.

3. Assuming that a nuisance per se exception to governmental immunity exists, it is clear that the plaintiff has failed to establish a nuisance per se. A nuisance per se is an activity or condition that constitutes a nuisance at all times and under all circumstances, regardless of the care with which it is conducted or maintained. Because the operation of outdoor lighting is not an intrinsically unreasonable or dangerous activity, any negligent maintenance of the lamppost is not appropriately characterized as a nuisance per se. Accordingly the trial court did not err in granting summary disposition for the city on the basis of governmental immunity.

4. The trial court did not err in granting summary disposition for Fryling. Fryling had no duty to repair the hazard on a public sidewalk and could be held liable for its voluntary repair work only if that work increased the hazard. Clearly the repair work undertaken by Fryling reduced the hazard. The fact that some subsequent, unknown, intervening event created an entirely new hazard does not create a duty or liability where none existed originally, particularly where the resulting hazard is virtually identical to the original hazard. To hold that liability for injuries resulting from subsequent, intervening acts will attach to a citizen who voluntarily repairs a hazard on a public sidewalk would only serve to deter private citizens from acting voluntarily to minimize hazards to the public.

Affirmed.

FITZGERALD, J., concurring in part and dissenting in part, stated that summary disposition was properly granted for the city on the basis of governmental immunity, but that the trial court erred in granting summary disposition for Fryling because there was a genuine issue of material fact about which reasonable minds could differ concerning whether Fryling's actions increased the actual physical nature of the hazard that existed or increased the hazard by concealing the existence of the defect.

1. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — PUBLIC SIDEWALKS — MUNICIPAL PARKING LOTS.

A public sidewalk is not part of a highway for which a governmental agency may be held liable for personal injury or property damage pursuant to the highway exception to governmental immunity unless the sidewalk is adjacent to or along the highway; a public sidewalk that runs alongside a municipal parking lot but does not run alongside a highway is not part of a highway for the purpose of the highway exception, even if that sidewalk is part of an interconnected sidewalk system that includes parts that run parallel to a highway (MCL 691.1401[e], 691.1402[1]).

2. NUISANCE — NUISANCE PER SE — OUTDOOR LIGHTING.

A nuisance per se is an activity or condition that constitutes a nuisance at all times and under all circumstances without regard to the care with which it is conducted or maintained; because the operation of outdoor lighting is not an intrinsically unreasonable or dangerous activity, any negligent maintenance of a lamppost is not a nuisance per se.

3. NEGLIGENCE — PUBLIC SIDEWALKS — VOLUNTARY REPAIRS.

A private landowner is under no obligation at common law to repair and maintain an abutting public sidewalk; a private landowner who voluntarily undertakes to make repairs to a public sidewalk in order to minimize a hazard to the public can be held liable for an injury suffered by a third party only where the voluntary repair work increases the hazard to the public; the making of a voluntary repair that does not increase the hazard to the public does not create a duty on the part of the person making the voluntary repairs to continue to make repairs where some intervening event creates an entirely new hazard.

*Robert J. Riley* and *William W. Decker, Jr.,* for the plaintiff.

*Margaret P. Bloemers*, Assistant City Attorney, for the city of Grand Rapids.

*Charles H. Worsfold* and *David M. Pierangeli*, for Fryling Development Corporation.

Before: SAAD, P.J., and FITZGERALD and O'CONNELL, JJ.

SAAD, P.J.

### I. NATURE OF THE CASE

In this personal injury case, plaintiff stepped on exposed electrical wires located on a public right of way owned and maintained by the city of Grand Rapids. The wires protruded from a pedestal that had held a lamppost that had been knocked down several weeks before the injury in issue. Approximately one month before the incident, defendant Fryling Development Corporation had an electrical worker cap and wrap the wires with electrical tape, place a plastic bag over the wires, and cover the entire repair with an orange cone.

After some discovery, the court held hearings regarding defendants' motions for summary disposition and dismissed plaintiff's claims against both the city and Fryling. The court dismissed the claims against the city on governmental immunity grounds and reasoned that, under *Stabley v Huron-Clinton Metropolitan Park Authority*, 228 Mich App 363, 364; 579 NW2d 374 (1998), because the accident did not occur on a sidewalk adjacent to a public roadway, the "highway exception" to governmental immunity did not apply. We affirm this ruling that is clearly supported by Michigan case law, and we also affirm the trial court's ruling that plaintiff cannot avoid the city's

governmental immunity defense under a nuisance per se exception.

A closer and more difficult question is raised by the trial court's summary dismissal of plaintiff's claim against Fryling. Under Michigan law, though a landowner, as here, owes no duty to repair a defect in a public street, the landowner may be liable if, in seeking to correct the hazard, the landowner actually creates a new hazard or increases instead of decreases the original hazard.[1] Here, the trial court reasoned that Fryling did not create a new hazard or increase the original hazard when it removed the fallen lamppost, capped and taped the exposed wires, placed them in a plastic bag, and placed an orange cone over the pedestal. To the contrary, the court ruled that Fryling's conduct unquestionably decreased the immediate hazard, and, therefore, the court granted summary disposition for Fryling.

On appeal, plaintiff argues that the subsequent unknown event that uncovered and undid Fryling's "repair work," coupled with Fryling's removal of the fallen lamppost, created a jury question regarding the pivotal issue whether Fryling increased rather than decreased the original hazard. We reject this argument and affirm the trial court's granting of summary disposition because (1) at the time Fryling did its repair work, reasonable minds could not differ that Fryling decreased, not increased, the hazard and (2) Fryling had no continuing duty to inspect the sight, to make continuing repairs, or to repair the hazard again after a subsequent, intervening act reexposed the

---

[1] *Ward v Frank's Nursery & Crafts, Inc*, 186 Mich App 120, 131-134; 463 NW2d 442 (1990).

wires. Having virtually eliminated the immediate hazard, as a good citizen should, Fryling ought not to be prejudiced because some unknown event intervened to create a new hazard virtually identical to the original hazard. To hold otherwise would deter citizens, who have no legal duty to ameliorate those conditions, from acting responsibly, thereby creating much greater risks to the public.

## II. FACTS AND PROCEEDINGS

One morning in December 1996, Ronald Minnie, director of maintenance for Fryling's building at 50 Monroe Place in Grand Rapids, noticed that a fifteen-foot-tall lamppost near the building had fallen over. Minnie saw between six and eight exposed, bare wires protruding from the top of the cement pedestal on which the lamppost stood, beside which lay the fallen post. Minnie had the post moved to the basement of 50 Monroe Place and talked to employees from Westmaas Electric about reinstallation. Thereafter, Westmaas Electric capped the wires using wire nuts, taped them off with black electrical tape, covered the wires with a plastic bag, and covered the pedestal with an orange cone. After Westmaas employees took those steps, they performed no further work on the lamppost, pedestal, or wires.

On July 8, 1998, plaintiff filed a complaint alleging that, on January 21, 1997, (approximately one month after Westmaas employees capped and wrapped the wires), plaintiff stepped on exposed electrical wires on a sidewalk adjacent to 50 Monroe Place.[2] Plaintiff

---

[2] Evidently, the orange cone that covered the wrapped wires was somehow removed or missing when plaintiff stepped on them. Minnie testified

claimed that she suffered a severe electrical shock and that she suffered permanent injuries. Plaintiff further alleged that the sidewalk and light fixtures from which the wires protruded are within the ownership and control of the city, Fryling, or both. Accordingly, plaintiff contended that Fryling is liable for her injuries caused by the dangerous condition and that the city is liable under the public highway and nuisance per se exceptions to governmental immunity under the governmental tort liability act. MCL 691.1402.

On April 26, 1999, the city filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and argued that the public highway exception does not apply because the sidewalk on which plaintiff was injured is located between a city-owned parking lot and Fryling's building and, therefore, is not adjacent to a highway within the city's jurisdiction. Regarding plaintiff's nuisance per se claim, the city argued that, because the lamppost did not constitute a condition that was dangerous at all times and under all conditions, a nuisance per se did not exist. Following oral argument, the trial court granted the city's motion for summary disposition and dismissed plaintiff's claims against the city in an order entered June 10, 1999.

On July 29, 1999, Fryling filed a motion for summary disposition pursuant to MCR 2.116(C)(10) and argued that, as a matter of law, an abutting landowner cannot be held liable for injuries that occur on a public right of way. Plaintiff also filed a motion for partial summary disposition under MCR 2.116(C)(10), arguing that no genuine issue of fact exists regarding

that, when he saw the pedestal the day after the incident, it appeared that a snowplow or some other vehicle may have scraped it, tearing the plastic bag and exposing the wires.

Fryling's failure to comply with its duty to place the city on notice regarding its own attempt to repair the fallen lamppost, its failure to make permanent repairs, and its failure to notify the city about the needed repairs.

On August 12, 1999, the trial court granted Fryling's motion for summary disposition. As noted above, the trial court specifically ruled that Fryling is not liable for plaintiff's injuries because it did not create a new hazard or make the area more hazardous by wrapping the electrical wires and because the city, not Fryling, had a duty to repair the fallen lamppost. Accordingly, the trial court entered an order dismissing plaintiff's action against Fryling on September 7, 1999. Plaintiff appeals as of right the orders dismissing the city and Fryling, and we affirm.

### III. ANALYSIS

#### A. GOVERNMENTAL IMMUNITY

Plaintiff contends that the trial court erred in granting summary disposition to the city because, under the public highway exception to governmental immunity, the city had a duty to make the sidewalk reasonably safe.

This Court reviews de novo rulings regarding motions for summary disposition. *Van v Zahorik*, 460 Mich 320, 326; 597 NW2d 15 (1999). Summary disposition is properly granted under MCR 2.116(C)(7) if a claim is barred because of immunity granted by law.[3]

---

[3] In determining whether the plaintiff's claim is barred by governmental immunity, this Court must consider all documentary evidence, including any pleadings, depositions, admissions, or any documentary evidence submitted by the parties. *Suttles v Dep't of Transportation*, 457 Mich 635,

MCL 691.1407(1) provides, in part, that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." As our Supreme Court explained in *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 155-156; 615 NW2d 702 (2000):

> Governmental immunity is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a governmental agency. Under the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, governmental agencies are immune from tort liability when engaged in a governmental function. Immunity from tort liability, as provided by MCL 691.1407; MSA 3.996(107), is expressed in the broadest possible language—it extends immunity to all governmental agencies for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function. However, there are five statutory exceptions to governmental immunity. [Case citations omitted.]

"The highway exception waives the absolute immunity of governmental units with regard to defective highways under their jurisdiction." *Nawrocki, supra* at 158. At the time of plaintiff's accident, the exception provided, in pertinent part:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may

642; 578 NW2d 295 (1998). In order to survive a motion for summary disposition under this rule, a plaintiff must allege facts in the complaint justifying application of an exception to governmental immunity. *Id.*

recover the damages suffered by him or her from the governmental agency. [MCL 691.1402(1).]

A "highway," for purposes of the highway exception is defined as "every public highway, road, and street which is open for public travel and shall include bridges, sidewalks, crosswalks, and culverts on any highway. The term highway does not include alleys, trees, and utility poles." MCL 691.1401(e).[4] Notwithstanding this general definition, however, our Supreme Court has specifically stated:

> We have held that the highway exception is a narrowly drawn exception to a broad grant of immunity. An action may not be maintained under the highway exception unless it is clearly within the scope and meaning of the statute. *Scheurman v Dep't of Transportation,* 434 Mich 619, 626-627, 630; 456 NW2d 66 (1990). Thus, in order for the plaintiff to proceed, the path on which he was injured must constitute a "sidewalk." [*Hatch v Grand Haven Twp,* 461 Mich 457, 464; 606 NW2d 633 (2000).]

In *Stabley, supra* at 364, the plaintiff filed a suit based on the highway exception for injuries he suffered while rollerblading on a paved path through a park. In determining whether the trail constituted a "sidewalk" within the statute, our Court opined:

> According to *Webster's New World Dictionary,* a "sidewalk" is "a path for pedestrians, usually paved, along the side of a street." *The American Heritage Dictionary: Sec-*

---

[4] Following the enactment of 1999 PA 205, effective December 21, 1999, the current definition in MCL 691.1401(e) reads:

"Highway" means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles.

*ond College Edition* defines "sidewalk" as a "walk or raised
path for pedestrians along the side of a road." *Random
House Webster's College Dictionary* (1992) defines "side-
walk" as "a usu. paved walk at the side of a roadway." In
Black's Law Dictionary (6th ed), "sidewalk" is defined as
"[t]hat part of a public street or highway designed for the
use of pedestrians."

Furthermore, the Supreme Court has looked to defini-
tions set forth in the Michigan Vehicle Code to ascertain the
meaning of terms shared by the Michigan Vehicle Code and
the governmental immunity statute. See *Roy v Dep't of
Transportation*, 428 Mich 330, 338-340; 408 NW2d 783
(1987). In the Michigan Vehicle Code, the term "sidewalk" is
defined as "that portion of a street between the curb lines,
or lateral lines of roadway, and the adjacent property lines
intended for the use of pedestrians." MCL 257.60; MSA
9.1860. [*Stabley, supra* at 367-368.]

This Court then considered the phrase "sidewalks . . .
on any highway" and stated:

There are no published Michigan cases that expressly
construe the phrase "sidewalks . . . on any highway." How-
ever, the highway exception has been applied where the
injury was sustained on a sidewalk "adjacent" to or "along"
a county road. See *Listanski v Canton Twp*, 452 Mich 678,
682; 551 NW2d 98 (1996). Moreover, in *Campbell v Detroit*,
51 Mich App 34, 35-36; 214 NW2d 337 (1973), this Court
determined that a sidewalk alongside a street that had been
closed for some time and was being removed for an urban
renewal project was not a sidewalk "on any highway"
because the street was not open for public travel, as
required by the statutory definition of highway.

In light of the foregoing, we conclude that linking the
word "sidewalk" with an adjacent road is in accord with the
common and approved usage of the word. See *USAA Ins Co
v Houston General Ins Co*, 220 Mich App 386, 391; 559
NW2d 98 (1996). Plaintiff's fall did not occur on the portion
of the trail that runs adjacent to the roadway, but rather on
the portion that runs through the wooded interior of the

park. *Because plaintiff's fall did not occur on a pedestrian way that ran alongside a public roadway, plaintiff's fall did not occur on a "sidewalk" within the meaning of MCL 691.1401(e); MSA 3.996(101)(e).* Consequently, defendants are entitled to immunity. [*Stabley, supra* at 368-369 (emphasis added).]

Here, there is no genuine issue of material fact regarding the location of the sidewalk; it runs between, not alongside, Monroe and Ottawa Streets and is adjacent to a parking lot and 50 Monroe Place. Accordingly, pursuant to *Stabley*, because the sidewalk does not run alongside or adjacent to a public roadway, the highway exception does not apply to avoid the city's governmental immunity defense.[5]

Plaintiff claims that *Stabley* is distinguishable because, here, the length of the sidewalk is short, the sidewalk is located in a downtown area with regular pedestrian traffic, and the sidewalk "is part of one interconnected sidewalk system." However, the length of the sidewalk and the amount of foot traffic it bears is not relevant to our interpretation of the phrase "sidewalks . . . on a highway" because the statute makes no such distinction. MCL 691.1401(e). Moreover, regardless of whether the sidewalk is part of an "interconnected sidewalk system," parts of which may run parallel to a roadway, *Stabley* makes clear that the critical inquiry is whether the injury occurred on a portion of the sidewalk that *runs adjacent to a public roadway. Stabley, supra* at 369. Accordingly, the trial court did not err in ruling that the highway

---

[5] Although the sidewalk *connects* Monroe and Ottawa streets, similar to the circumstances in *Stabley*, the incident here occurred on a portion of the sidewalk adjacent to the parking lot and 50 Monroe Place, not beside or near the streets.

exception does not apply to plaintiff's claim against the city.

Plaintiff also argues that the trial court erred in ruling that a "nuisance per se" exception to governmental immunity did not apply.

While it remains unclear whether a nuisance per se exception to governmental immunity exists in Michigan, there is no disputed issue of fact regarding whether the lamppost, pedestal, and wires constitute a nuisance per se. See, e.g., *Kent Co Aeronautics Bd v Dept of State Police*, 239 Mich App 563, 586, n 6; 609 NW2d 593 (2000); *Fox v Ogemaw Co*, 208 Mich App 697, 700; 528 NW2d 210 (1995).

A nuisance per se is "an activity or condition which constitutes a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained." *Li v Feldt (After Second Remand)*, 439 Mich 457, 476-477; 487 NW2d 127 (1992). The operation of outdoor lighting serves an important public purpose, and plaintiff's claim concerns the care and maintenance of that lighting. Accordingly, plaintiff's claim must fail because the operation of an outdoor light, "without regard to the care with which it is . . . maintained," is not "an intrinsically unreasonable or dangerous activity," and, therefore, cannot constitute a nuisance per se. *Id.* at 477. Plaintiff cannot prevail in her attempt to assert a negligence theory under the guise of a nuisance per se claim to avoid governmental immunity.

Accordingly, the trial court did not err in granting summary disposition to the city under MCR 2.116(C)(7), because plaintiff's claims are banned by immunity granted by law.

### B. FRYLING DECREASED THE HAZARD

Plaintiff claims that the trial court erred in granting summary disposition to Fryling because Fryling increased the risk of danger by covering the exposed wires and is, therefore, liable for plaintiff's injuries.

Fryling brought this motion under MCR 2.116(C)(10). Summary disposition is proper under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. In deciding a motion under this rule, we review affidavits, pleadings, depositions, admissions, and other documentary evidence to determine if a record might be developed that would leave open an issue on which reasonable minds could differ. *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

The trial court correctly stated and applied the law—Fryling had no duty to repair the hazard on a public sidewalk[6] and could be held liable for its voluntary "repair work" only if it increased rather than decreased the hazard in issue. *Ward, supra*, at 131-134. Here, reasonable minds could not differ—Fryling clearly reduced the hazard by its conduct. That some unknown intervening event created an entirely new

---

[6] In *Bivens v Grand Rapids*, 443 Mich 391, 395; 505 NW2d 239 (1993), our Supreme Court stated:

> At common law, a landowner is under no obligation to repair and maintain an abutting public sidewalk. *Detroit v Chaffee*, 70 Mich 80, 85; 37 NW 882 (1888); *Levendoski v Geisenhaver*, 375 Mich 225, 227; 134 NW2d 228 (1965). Such an obligation arises only when it is imposed pursuant to authority granted by the state. *Chafee*, 70 Mich 85; *Levendoski*, 375 Mich 227; see also 2 Restatement Torts, 2d, § 288(c), p 29.

hazard does not create liability, particularly where, as here, the resulting hazard is virtually identical to the original hazard.

To make Fryling responsible for unknown intervening events[7] that caused the wires to, once again, be exposed would create a duty where none existed originally. That Fryling substantially minimized the original hazard does not, without more, make it a guarantor that the hazard will remain decreased. Having voluntarily acted properly to decrease the hazard, Fryling should not be penalized for subsequent, intervening acts of an unknown third party who negated the repair. Were we to hold otherwise, citizens may be deterred from acting voluntarily to minimize hazards for fear of exposing themselves to unforeseen liability, with the result that the public would be exposed to increased risks.

IV. RESPONSE TO THE DISSENT

If Fryling concealed the hazard that caused plaintiff's injuries, we would agree with the dissent that the jury should decide if Fryling's concealment of the hazard increased the hazard that caused plaintiff's injuries. However, reasonable minds cannot differ— neither did Fryling conceal the hazard nor did plaintiff's injuries happen because she was lulled into a false sense of security by Fryling's alleged concealment of the hazard.

---

[7] It is pure speculation whether the wires became exposed from a third party's negligent or intentional conduct. As we stated in n 2, *ante* at 49-50, however, Minnie testified that it appeared to him that a plow or other vehicle may have hit or scraped the pedestal.

In *Kinsey v Lake Odessa Machine Products*, 368 Mich 666; 118 NW2d 950 (1962), which the dissent erroneously regards as controlling, the defendant in fact concealed the hazard by covering a hole, which made the situation appear safe when it was not. There, the defendant's act of covering up the hole (concealment) caused the unsuspecting plaintiff to fall into a trap. Whereas here neither did Fryling conceal a danger and thereby set a trap for an unsuspecting traveler nor did plaintiff fall into a trap caused by Fryling's alleged concealment. To the contrary, Fryling decreased the hazard, substantially, and some other, unknown, third person recreated the hazard of exposed wires. Indeed, at the time of the accident, no one, including plaintiff, could have been lulled into a false sense of security—the wires were, at that time, exposed, not superficially hidden.

Finally, it is pure conjecture to allow a jury to speculate whether, had Fryling left the lamppost lying where it fell (which would have created a separate hazard), the city of Grand Rapids would have made repair efforts. Here, the city apparently failed to take any remedial action. However, regardless of the city's inaction, there is no basis for imposing liability on Fryling, whose conduct simply reduced the original hazard.

Affirmed.

O'CONNELL, J., concurred.

FITZGERALD, J. (*concurring in part and dissenting in part*). I concur with the majority's conclusion that the trial court properly granted summary disposition for the city under MCR 2.116(C)(7). I respectfully disagree, however, with the majority's conclusion that

summary disposition was properly granted for Fryling Development Corporation under MCR 2.116(C)(10).

Summary disposition under MCR 2.116(C)(10) is appropriate if there is no genuine issue of material fact. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999).

Plaintiff alleged negligence by Fryling resulting in injuries to plaintiff. Plaintiff stepped on exposed electrical wires protruding from a pedestal that had held a lamppost that had been knocked down. Fryling had an electrical worker cap and wrap the wires with electrical tape, place a plastic bag over the wires, and cover the entire repair with an orange cone. Fryling then placed the lamppost in the basement of its building. After these steps were taken, no further work on the lamppost, pedestal, or wires was performed, and the city was not contacted regarding the situation. At the time of plaintiff's injuries, the orange cone that had covered the wrapped wires was missing, the plastic bag was torn, and the wires were exposed.[1] Plaintiff argued that the temporary repair increased the risk of injury to pedestrians by concealing the

---

[1] Testimony was presented that it appeared that a snowplow or some other vehicle may have scraped the cone, tearing the plastic bag and exposing the wires.

hazard and hiding the evidence that would have placed the city on notice of the need for repair.[2]

There is no dispute that Fryling did not have a duty to repair a defect in the abutting public sidewalk. *Bivens v Grand Rapids*, 443 Mich 391, 395; 505 NW2d 239 (1993). However, a landowner may be liable if, in seeking to correct a defect, the landowner actually creates a new hazard or increases the original hazard. *Ward v Frank's Nursery & Crafts, Inc*, 186 Mich App 120, 131-134; 463 NW2d 442 (1990).

In *Kinsey v Lake Odessa Machine Products*, 368 Mich 666, 667; 118 NW2d 950 (1962), the Court addressed a case similar to the present case:

> Plaintiff . . . [alleged] negligence by defendant resulting in damage to plaintiff's vehicle. The left rear dual wheel of plaintiff's semitrailer fell into a hole in the public right-of-way within close proximity of defendant's driveway. The hole was for drainage of surface water. Some months before the accident the metal grating had broken. Defendant had placed a metal drum for a lid over the hole. At the time of the accident . . . the drum had become flattened and insecure. Plaintiff alleges that the makeshift lid was covered by a light snow-fall which resulted in the defective condi-

---

[2] Unlike the majority, I do not believe that Fryling is being "penalized for subsequent, intervening acts of an unknown third party who negated the repair." *Ante* at 58. Further, I question the majority's conclusion that "[t]o make Fryling responsible for unknown intervening events that caused the wires to, once again, be exposed would create a duty where none existed originally", *ante* at 58, in light of the Court's holding in *Kinsey v Lake Odessa Machine Products*, 368 Mich 666; 118 NW2d 950 (1962). In *Kinsey*, the defendant placed a metal drum for a lid over a hole where a metal grating had broken. By the time the plaintiff's vehicle was damaged as a result of a tire falling into the hole, the drum had become flattened and insecure and snow had hidden the lid. Clearly, intervening events caused the hole to once again be exposed. Nonetheless, the Court held that a question of fact existed with regard to whether the defendant breached the duty to see that the altered condition did not constitute a new hazard or one more dangerous than before.

tion being completely hidden and "dangerous to vehicular traffic entering or leaving the premises of defendant."

The Court, noting that the defendant's attempt to alter the hazardous condition resulted in a duty to see to it that the altered condition did not constitute a new hazard, or one more dangerous than before, stated:

> It is a question of fact, in this case, therefore, whether the use of the oil drum as alleged, under the conditions prevailing, constituted a breach of duty owed to plaintiff; further, if there was such a breach, whether it was the proximate cause of the injury and damage. [*Id.* at 670.]

Here, reasonable minds could differ regarding whether Fryling's actions in removing the fallen lamppost and temporarily capping and covering the exposed wires increased the hazard. A reasonable juror might also determine that Fryling increased the hazard on the basis that Fryling concealed the existence of a defect, resulting in the failure of the city to repair the defect because of lack of notice of the defect. As stated by Justice Cardozo in *Marks v Nambil Realty Co, Inc,* 245 NY 256, 259; 157 NE 129 (1927), and quoted in *Ray v Transamerica Ins Co,* 46 Mich App 647, 658; 208 NW2d 610 (1973):

> His [plaintiff's] case is made out when it appears that by reason of such negligence what was wrong is still wrong, though prudence would have made it right. . . . The inference is permissible that the [conduct by defendant] cloaked the defect, dulled the call to vigilance, and so aggravated the danger.

Although this statement was made in a different context, I find it to be equally applicable in the present case where Fryling attempted to alter the hazard-

ous condition and, in doing so, concealed the hazard, thus thwarting a proper repair by the city. Accordingly, because a genuine issue of material fact exists, summary disposition in favor of Fryling was not appropriate. I would reverse that part of the order granting summary disposition in favor of defendant Fryling Development Corporation.